## Roush et al. v. First Nat. Bank & Trust Co. et al.

March 25, 1949.

Rehearing denied June 24, 1949.

Frank S. Ginocchio, S. S. Yantis and A. E. Funk, Jr. for appellants.

Stoll, Muir, Townsend, Park & Mohney for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This appeal is from a ruling of the chancellor in sustaining the special and general demurrers interposed by the defendant to plaintiff's petition and amended petition. The plaintiff failed to plead further and after dismissal of her petition this appeal was allowed.

Plaintiff's petition alleged that she was, and had been at all times mentioned, the owner of 115 shares of stock of defendant, Fayette National Bank of Lexington, and that she was suing as a stockholder and on behalf of other stockholders similarly situated; that the Fayette National Bank, organized in 1870, built up a profitable and conservative business prior to 1929, at which time, unknown to the depositors, the general public, or to this plaintiff, its officers departed from safe and conservative banking policy and began making unsafe loans to themselves, their friends and families,

largely for the purpose of gambling on the stock market; that the total of such loans made as of April 27, 1931, amounted to $1,126,000, which constituted approximately 91% of all the individual deposits of the bank; that the controlling officers of the bank, for their individual benefit and advantage, after the crash of 1929, allowed speculative loans to be renewed, failed to require adequate collateral, and failed to sell collateral when its value had declined to less than the face value of the loans, and by so doing placed themselves in a position where their personal and individual interests conflicted with their fiducial interests as officers and directors; that by April 27, 1931, by reason of this mismanagement, the liquidated assets of the bank fell to such a low point that the bank could no longer meet its demands in the usual and regular course of business; and that the officers of the bank, instead of paying their own indebtedness and requiring others to do likewise, thereby enabling the continued operation of the bank, entered into a written contract with the defendant, First National Bank, ostensibly for the purpose of effecting a voluntary liquidation of the Fayette National, but actually to shield and protect the officers, directors, and their friends from being called upon immediately to pay their loans to a Receiver which the Comptroller of the Currency was then threatening to appoint.

The terms of the contract called for an assignment and transfer in trust of all assets to First National, consisting of:

(1) Numerous items which were set forth in what was called Schedule C amounting to $3,442,396.89.

(2) All other assets not listed in Schedule C including the 15 story building owned by Fayette National, set forth in Schedule D and valued at $650,026.53.

(3) All books, records, etc., belonging to Fayette National.

It further contained an agreement to sell to First National for $60,000 cash, its good will and gave an option for two years for purchase of the bank building at the price of $450,000, with a rental provision until the option was exercised.

First National, by the terms of the contract, agreed

to take over the assets for the purpose of liquidation and to assume and pay all liabilities existing on April 27, 1931, which were shown by Schedule E to amount to $3,442,396.89.

It was mutually agreed by the terms of the contract that the assets listed in Schedule D, totalling $650,026.53, should be kept in a separate fund and for a period of two years should be called a Guaranty for the use of First National in the event that any of the assets listed in Schedule C should not be collected in full. If the assets in Schedule C were collected, then those assets listed in Schedule D were to be turned over and refunded to Fayette National for the benefit of Fayette National and its stockholders.

The contract further provided that First National should have complete charge of the liquidation for a period of two years and the contract might be extended by agreement. In the liquidation 5 members of Fayette National were to act as a liquidating committee, serving in an advisory capacity. In the event of disagreement, the final determination was to be made by the directors of First National.

Plaintiff alleged that each member of this liquidation committee, their friends and families, were heavily indebted to Fayette National and could not, in the liquidation of the assets, pay off or liquidate their own indebtedness, and that because of this indebtedness and involvement they could not, and did not, exercise fair or impartial judgment on behalf of Fayette National. First National at all times knew of this, and by the exercise of its power under the contract caused each member of the committee to be held in legal duress.

It was alleged that during the 2 years, 1 month period of liquidation no real or honest effort was made to collect the assets in Schedule C; that although there was no loss existing in Schedule C assets, First National reported and asserted there had been a loss sustained in these assets of more than $500,000; that all of the assets of Schedule D, including the building set aside as a Guaranty, became the property of First National, and in addition First National became relieved of the good will payment of $60,000, with the result that

out of the entire liquidation neither Fayette National nor its stockholders received anything; and that actually there was no loss sustained by First National in Schedule C assets as those assets were actually collected in full and no accounting made in either Schedule C or D, but that if a proper accounting is required, First National will be found owing Fayette National a sum in excess of $500,000.

It was then alleged that the Board of Directors and officers of Fayette National no longer exists and practically all former members are dead, and that if any are now living they would be less than a quorum; and that it would be useless to demand of the remaining directors that this suit be filed because of the conflicting interests, and if they did file such suit upon demand they would not likely prosecute the action in good faith.

Plaintiff then prayed that she be permitted to prosecute the action as a stockholder on her own behalf and all other stockholders of Fayette National similarly situated. She asked that First National be required to file the contract of April 27, 1931, and a complete accounting and settlement of all its acts in the liquidation up to the present date, and prayed for judgment in the sum of $500,000.

To this petition First National filed its special demurrer on the ground that the petition showed the plaintiff did not have legal capacity to sue or to file or maintain the action, and without waiving the special demurrer filed a general demurrer.

The court sustained both demurrers. The plaintiff then filed an amended petition reiterating and adopting all of the allegations of the original petition and in addition stated that Frst National, "prior to and at the time it took over said assets, reported that there had been sustained a loss in said Schedule C Assets of more than Five Hundred Thousand Dollars ($500,000.00), and after taking over said Schedule C Assets in full, but never reported that fact to the defendant, Fayette National, nor to the stockholders of the Fayette National, nor to the plaintiff, nor did said defendant, First National, ever make any accounting to Favette National or to any of the stockholders of Fayette National or to

the plaintiff showing the aforesaid collection by First National of said Schedule C Assets after taking the same over, and this plaintiff and said Fayette National and its stockholders did not know of the collection of said assets by First National, and the fact that First National had collected all of said Schedule C Assets was concealed by First National and never disclosed to Fayette National or its stockholders, and this plaintiff did not have any information or knowledge thereof until a short time prior to the filing of this action."

In a written opinion sustaining the special demurrer the chancellor stated that the plaintiff has no right to maintain the action because no demand had been made by her upon the Fayette National, its directors, or stockholders, to institute an action, and further because the petition does not allege such demand was made nor show any facts to excuse failure so to do.

Appellant contends that a demand upon the corporate officers and directors would have been futile and unavailing, or if granted, the suit would have been in unfriendly hands. The appellee, on the other hand, contends the chancellor should be sustained for the reason that there are no allegations of a demand upon the board of directors and the subsequent refusal of the board to maintain this suit, nor do the allegations sufficiently show excuse for failure to make demand.

Many cases are cited by the litigating parties in which conflicting views have been adopted as to the right of a stockholder to bring an action without prior demand on the directors. The facts in none of the cited cases are foursquare with the facts at hand. The general rule seems to be that a stockholder cannot institute an action in the name of the corporation until after demand has been made upon the corporation and it has refused to sue. However, it seems to be the generally accepted view that a demand upon corporate authorities for redress of grievance may be dispensed with as a condition precedent to a stockholder's right to bring the action, and that a situation can be such as will excuse failure to make demand. Such a situation exists when it appears that a demand would be an idle, useless, and unavailing effort because, if granted, the litigation would be in the control of unfriendly hands.

In Harris v. Tri-Union Oil & Gas Co., 283 Ky. 241. 140 S. W. 2d 1056, 1057, it was said:

"The general rule is that a stockholder cannot institute an action in the name of the corporation until after he has made demand upon the corporation and it has refused to sue. But where it appears that such demand would be futile and unavailing, or if granted, the litigation would be of necessity in unfriendly hands, such a demand is not a condition precedent to a stockholder's right to sue on behalf of the corporation. See 18 C. J. S., Corporations, sec. 564-c, page 1283; 14 C. J. 924, sec. 1444-c, and page 931, sec. 1449-b; Lebus v. Stansifer, 154 Ky. 444, 157 S. W. 727; Taylor v. Todd, 241 Ky. 605, 44 S. W. 2d 606. And it is within the power of the court to determine whether or not it would have been useless to have made demand upon the corporation to bring the suit. 14 C. J. 934, Sec. 1451."

We think the plaintiff's petition sets out sufficient facts, if taken as true, to show that it would have been a useless gesture on her part to make a demand. We, conclude, therefore, that the special demurrer was improperly sustained.

We now come to the matter of the general demurrer. In sustaining the general demurrer, the chancellor said:

"The plaintiff brought her action just 1 day before it would have been barred by the 15 year statute of limitation, and does not give any reason for her long delay in asserting her claim. She knew, or by the exercise of any diligence could have known, that the First National Bank and Trust Company was not recognizing any right or interest of the Fayette National Bank's stockholders in any of the assets of the former acquired from the latter. Therefore, we must assume that plaintiff knew of her rights. She had ample opportunity to assert these rights in the proper forum for courts in Fayette County have been functioning during the entire period of delay. By reason of her delay the defendants have good reason to believe that her alleged rights were abandoned or are worthless. Because of the change in the condition of relations during this period of delay, it would be an injustice to the defendants to permit her now to assert her claim."

We are immediately confronted with the question as to whether or not the defense of laches can be raised by demurrer. Generally the statute of limitations, or laches, must be pleaded and cannot be raised by demurrer. However, there are exceptions to this general rule, and in many jurisdictions the defense of statute of limitations may be taken advantage of by demurrer where it is apparent on the face of the petition that the cause of action has become barred, and, likewise, the defense of laches may be raised by demurrer where the showing on the face of the petition is clear and uncontrovertible.

In Crady v. Hubrich et al., 299 Ky. 461, 185 S. W. 2d 949, 951, the court said:

"We have defined laches as 'such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less extensive, and other circumstances causing the adverse party to be prejudiced, operates as a bar to the petitioner's right to recover in a court of equity.' Gover's Adm'r et al. v. Dunagan, 299 Ky. 38, 184 S. W. 2d 225, 226. As frequently stated, what amounts to laches will depend upon the special facts and circumstances as shown in each case. In Shea v. Shea, 296 Mass. 143, 4 N. E. 2d 1015, 1018, the court said: 'Whether there has been laches is generally a question of fact, McGrath v. C. T. Sherer Co. 291 Mass. 35, 195 N. E. 913, requiring a consideration of all the circumstances attendant on delay in bringing a suit in equity.' While a petition may show on its face such laches on the part of the plaintiff that a court ought not to grant relief, yet laches, being a mixed question of law and fact, should not usually be disposed of on demurrer. We think the correct rule deducible from the authorities is stated in Bush v. Hillman Land Company, 22 Del. Ch. 374, 2 A. 2d 133, 137, where the court said: 'What constitutes laches is so unconfined to any particular fact patterns and so dependent for its demonstration on the facts and circumstances of each case, that the court should be quite clearly of the opinion that it exists before saying so on a demurrer to a bill.' "

Appellant states in her petition that she has been a stockholder in Fayette National during all of the time that her cause of action developed. The petition shows

on its face that she has waited nearly 15 years before initiating action to protect any rights she may have had as a result of the liquidation of Fayette National assets. By reason of her delay the appellee had good reason to believe that her alleged rights were abandoned. Because of the nature of the transaction it would be almost impossible to effect a proper accounting at this late date. It would certainly work to the prejudice of the appellee if an action were allowed. We think the appellant did not allege sufficient facts excusing or warranting her delay. While it is true that only in the most extreme cases would it be proper to sustain a general demurrer to the petition on the basis of the doctrine of laches, we think the chancellor was here confronted with such a situation as warranted his decision. Here there has certainly been such neglect or omission to assert a right, which, taken in conjunction with the lapse of time, more or less extensive, and other circumstances causing the adverse party to be prejudiced, should bar appellant's right of recovery in a court of equity.

Another matter presents itself to us. Neither party to the action questions the fact that this cause of action might be governed by the 15 year statute of limitations governing written contracts. KRS 413.090(2).

KRS 413.120 provides:

"The following actions shall be commenced within five years after the cause of action accrued: * * * (12) An action for relief or damages on the ground of fraud or mistake."

KRS 413.130 provides in subsection (3):

"In an action for relief or damages for fraud or mistake, referred to in sub-section (12) of KRS 413.120, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake. However, the action shall be commenced within ten years after the time of making the contract or the perpetration of the fraud."

Although not so named in the petition, only a casual reading thereof shows that the basis of the action was alleged fraudulent acts on the part of the defendant and officers of the Fayette National. We merely call atten-

tion to the following portion of the above quoted act:
"However, the action shall be commenced within ten
years after the time of making the contract or the per-
petration of the fraud."

In the case of Cox v. Simmerman, 243 Ky. 474, 48
S. W. 2d 1078, 1079, the court, in discussing the ques-
tion of whether the statute is raised by demurrer, rec-
ognized the general rule that the statute must be pleaded
and cannot be raised by demurrer. At the same time, ad-
mitting the rule not to be absolute, the court said:

"There is an exception to this general rule which
is thus tersely stated in the case of Forman v. Gault, 236
Ky. 213, 32 S. W. 2d 977, 979: 'Although limitations gen-
erally must be pleaded and may not be raised by de-
murrer * * * the rule respecting an action for relief
from fraud brought more than five years after the fraud
was perpetrated is that the plaintiff must allege facts
to excuse the delay or he fails to state a cause of ac-
tion.' "

There is some complaint made of costs unnecessar-
ily incurred by appellee. Appellee was at liberty to in-
clude in the record all matters necessary to its defense.
There is no merit in this contention.

Even though the special demurrer was improperly
sustained, the court properly sustained the general de-
murrer.

Wherefore, the judgment is affirmed.