CASE 2.—ACTION BY J. SMITH HAYS AGAINST THE EAST JELLICO COAL COMPANY TO QUIET TITLE TO LAND.—March 23, 1909.

# East Jellico Coal Co. v. Hays

Appeal for Knox Circuit Court.

H. C. FAULKNER, Circuit Judge.

Judgment for plaintiff, defendant, appeals—Reversed.

1. Adverse Possession—Operation and Effect—Presumption. of Grant.—Where land has been held adversely for 15 years, the law conclusively presumes a grant; but, if the adverse holding has not been continuous for 15 years, a grant may be presumed from this and other circumstances.

2. Equity—Laches Following Limitations.—A claim may be stale, so that a court of equity will not enforce it under the facts shown, although it is not barred by limitation.

3. Adverse Possession—Presumption of Grant—Evidence.—Evidence, in an action to quiet title. Held, to show such acquiescence in possession and assertion of ownership as to justify a presumption that the land was conveyed by one holding the title to a predecessor of defendants.

4 Vendor and Purchaser—Bona Fide Purchaser—Sufficiency of Evidence as to Purchase in Good Faith.—Evidence, in an action to quiet title. Held, to show that plaintiff was not a bona fide purchaser.

JAMES D. BLACK for appellant.

## AUTHORITIES CITED.

Bush v. Bush, 51 American Decision, 675; Bennett v. Hitherington, 6 Bush, 192, Carter v. Richardson, &c., 22 Law Rep., 1204; Price v. McDonald, 54 American Decisions; Interstate Investment Co. v. Bailey, 29 Law Rep., 468; Sec. 600, 2 Vol. Pomeroy Eq. Jur.; Commonwealth v. Gibson, 85 Ky., 666; Hornsby v. Davidson, 21 L. R., 1531; Howton v. Gilpin, 24 L. R., 630; Sec. 601, 2 Pom. Eq. Jur.; Lane, &c., v. Morton, &c., 23 L. R., 438; 4 Kent. Com., pp. 170 and 179; Fisk v. Branamon, 2 B. M., 379; Lillard v. McGee, 2 J. J. M., 449; Bradford v. Southgate, 4 Law Rep., 890; L. & N. R. R. Co. v. Graves' Assn., 78 Ky., 74; L. & N. R. R. Co. v. Montgomery, 17 Law Rep., 807.

JAMES M. HAYS and J. SMITH HAYS for appellee.

### POINTS AND AUTHORITIES.

1. The execution and genuineness of the alleged lost deed from Silas Barton to Elijah Rhodes is not shown by any evidence in the record. Its execution and genuineness should have been shown by "satisfactory evidence" to render its contents admissable. (17 Cyc., 425-536; Helton v. Asher, &c., 103 Ky., 735-6; Greenleaf on Evidence, Vol. 1, Sec. 390; Hornsby v. Davidson, 21 L. R., 1532.)

2. No actual possession of the land in controversy was ever had by any person. Appellant and its vendors did not by actual possession toll the title of Silas Barton to the land. (Interstate Investment Co. v. Bailey, 93 S. W., 578; 29 R., 468.)

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

J. Smith Hays brought this suit against the East Jellico Coal Company to quiet his title to a tract of 100 acres of land granted by the Commonwealth to Joel D. Partin on September 27, 1867, alleging that he was the owner and in possession of the land. The defendant answered traversing the allegations of the petition, and on final hearing the circuit court entered a judgment in favor of the plaintiff as prayed by him. The defendant appeals.

Both parties claim under Joel D. Partin. On March 17, 1879, Joel D. Partin and his wife conveyed the land to Silas Partin, and on February 8, 1906, the heirs at law of Silas Partin conveyed it to the plaintiff, Hays. On the other hand, the East Jellico Coal Company claims the land under a deed made to it on January 2, 1896, by William Bays and wife. Bays held the land under a deed made to him on February 28, 1889, by the heirs at law of Elijah Rhodes, and a deed of partition between him and H. H. Rhodes made on March 1, 1889; H. H. Rhodes being also one of the heirs at law of Elijah Rhodes. The defendant produced no title papers to Elijah Rhodes from Silas Partin, but it showed these facts: A man named Miller bought the land from Joel D. Partin some time in the seventies, and built a house and lived on it, intending to take possession of the tract; but this

house, as the lines of the survey are run, was about 200 feet outside of the line. He cleared and inclosed a body of land about his house, and this clearing and inclosure included seven or eight acres of the patent boundary. He sold out to Silas Partin, and gave him possession about the year 1880. Silas Partin moved into the house where Miller had lived and took possession of the survey claiming it as his own; Joel D. Partin, the patentee, making a deed to him. In the year 1881 Silas Partin traded this land with a man named Hensley for a tract about a mile and a half away, and moved to the tract he traded for. Hensley traded the tract he got from Partin to a man named West, and West traded it to Elijah Rhodes. How these trades were made does not appear; that is, no writings evidencing them are produced. While Silas Partin was living on the tract which he got from Hensley, a third person set up claim to a lien on that tract for $20. Silas Partin then sold that place to another person for a mare and colt, and from that time until his death rented land in the neighborhood of the tract in controversy. He claimed that there was $20 coming to him on this tract of land. Elijah Rhodes sold the timber off the land, the purchaser of the timber paying $20 of the purchase money to Silas Partin, and Silas Partin then said he was ready to make Elijah Rhodes a deed. All this occurred about the year 1882 or 1883. Elijah Rhodes held the land, using it as his own from that time until his death, in 1886, and after his death his heirs at law held it until 1889, when William Bays purchased it, and he held until about the year 1894, when he sold it to the East Jellico Coal Company, and it has held the land since its purchase. Silas Partin at no time after he received the $20 ever set up any claim to the land, although he lived near by and on land which he was renting. He did not give it in for taxation. It was held and used by Elijah Rhodes, and those claiming under him, as their own, as he

well knew, and yet he made no objection, although from time to time timber was cut off the land, which then constituted its chief value; he and his son assisting in getting the poplar timber off. After his death his heirs at law set up themselves no claim to the land, but on February 8, 1906, sold it to the plaintiff Hays for $5 an acre, although it was then worth $15 or $20 an acre.

It is earnestly insisted for Hays that the judgment of the circuit court is right because the defendant has produced no deed or other writing from Silas Partin divesting him of the title to the land; but, although no deed is produced, the question arises: Are the facts established by the proof sufficient to warrant a presumption that a deed was executed? It is a matter of common knowledge that mountain land of this sort twenty-five, or thirty years ago was considered valuable only for the timber on it, and that little care was taken in preserving or recording the muniments of title. The salable timber on this tract was cut off in the lifetime of Elijah Rhodes, and perhaps no controversy over the title would ever have arisen but that a valuable vein of coal has since been discovered in the vicinity. William Bays testified that, after he bought the land, H. H. Rhodes delivered to him a deed which, as shown by it, was signed by Silas Partin and his wife, and acknowledged, as shown by the certificate on it, before a deputy clerk. He then delivered the deed to the county clerk to be recorded, but did not pay the fees on it. The deed now cannot be found.

It is insisted that the testimony of William Bays as to the deed cannot be considered because he conveyed the land to the defendant and stands under the Code as though he had not made the conveyance, but he does not testify to anything done by Silas Partin. He simply testifies to seeing and having in his possession a certain document. He does not testify that Silas Partin had signed it. He only testifies to

the existence of the paper.  His testimony does not establish the deed, and the question remains:  Are the facts shown sufficient to raise a presumption that Silas Partin had signed the deed?  In 1 Greenleaf on Evidence, Sec. 46, the rule is thus stated:  "Juries are often instructed or advised, in more or less forcible terms, to presume conveyances between private individuals in favor of the party who has proved a right to the beneficial enjoyment of the property, and whose possession is consistent with the existence of such conveyance, as is to be presumed; especially if the possession, without such conveyance, would have been unlawful, or cannot be satisfactorily explained."  In 4 Wigmore on Evidence, Sec. 2522, the rule is thus stated:  "When a title to land is to be proved, the execution, contents, and loss of the appropriate document of grant may be presumed from certain circumstances; the inference resting on a principle of relevancy already considered.  (Ante, Secs. 148, 157.)  Those circumstances are the long continued possession of the land (or an appurtenant right) by a party claiming as owner, the non-claim of possible opponents, and such other varying circumstances of the particular case as increase the probability of an origin of grant for the situation as a whole."  See, also, Smith v. Cornelius, 41 W. Va. 59, 23 S. E. 599, 30 L. R. A. 747; Cahill v. Cahill, 75 Conn. 522, 54 Atl. 201, 732, 60 L. R. A. 706; Townsend v. Boyd, 217 Pa. 386, 66 Atl. 1099, 12 L. R. A. (N. S.) 1148.  In Badger v. Badger, 2 Wall, 94 17 L. Ed. 836, the United States Supreme Court thus stated the rule:  "In such cases courts of equity, acting upon their own inherent doctrine of discouraging for the peace of society antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim or a long acquiescence in the assertion of adverse rights.  Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be ex-

cused but by showing some actual hindrance or impediment caused by the fraud or concealment of the parties in possession, which will appeal to the conscience of the chancellor.''

The plaintiff here seeks the aid of the court of equity to quiet his title to the land after Silas Partin and his children slept on their rights for more than twenty years. In Severns v. Hill, 3 Bibb, 240, this court held that where the claimant of land did not prosecute his claim for more than twenty years from the date of a patent obtained by another and for about sixteen years after a purchaser had settled on the land, the court would refuse the claimant its aid. The same rule was followed in Barnett v. Emerson, 6 T. B. Mon. 607, and Baker v. Baker, 13 B. Mon. 406. When land has been held adversely for fifteen years, the law conclusively presumes a grant; but, if the adverse holding has not been continuous for fifteen years, the law may presume a grant from this and other circumstances. Whether the presumption of a grant will arise, as shown by the authorities citied, depends not alone upon the length of time that has elapsed, but upon all the circumstances. When limitation has run there is no need to call in play the presumption; but, when limitation has not run, other facts may be shown justifying the presumption of a grant, although this conclusion would not arise by operation of the law from the lapse of time alone. Thus a claim may be stale so that a court of equity will not enforce it under the facts shown, although it is not barred by limitation. Gatewood v. Gatewood, 70 S. W. 284, 24 Ky. Law Rep. 931.

It is shown here by three witnesses that Silas Partin said he would not make the deed unless he got the $20, that the $20 was paid him, and he then said he would make the deed. It is shown by two witnesses that he said he had received the $20 and was ready to make the deed. It is shown that after this Elijah Rhodes treated the land as his own, Silas Partin

acquiescing in it, and, although he lived in the neighborhood for something like twenty years, he set up no claim to the land and acquiesced in the ownership of it by Elijah Rhodes and those claiming under him. He did not give in the land for taxation. He lived on rented land. He had actual notice of the use of the land by Rhodes as his property, and of the different sales that were made, and was all the time living on rented land near by. If a conveyance cannot be presumed from such proof as this after twenty years, and after the death of the parties to the transaction, then it is hard to understand when such a presumption would arise. The suit was not brought until more than twenty years had elapsed. The conduct of the children of Silas Partin after his death was precisely similar to his conduct, until they made the conveyance to Hays at less than half the real value of the land. If this suit had been brought by them, they could not recover. Does Hays stand in their shoes?

The record shows that in February, 1906, he made a contract with them by which he was to pay them $5 an acre for so much of the land as they should manifest their title to. In July they made him a deed to the boundary at $5 an acre. At the time of these transactions, the defendant had possession of the land. Its possession was notice to him of its claim. About this time, or a little before, one of the children of Elijah Rhodes brought a suit for partition of the land his father owned; he not having joined in the deed to Hays. This suit was brought by James M. Hays, who was a partner with J. Smith Hays, the appellee, in the purchase of the land in controversy. In that suit the entire boundary in controversy is included in the petition drawn by James M. Hays, and so he had actual notice of Elijah Rhodes' claim to the land. In addition to this, what his vendors told J. Smith Hays, as shown by himself, taken in connection with the price at which they sold

the land, was sufficient to put him on notice. We, therefore, conclude that he is not a purchaser without notice, but stands in the shoes of his vendors, and that against him, as well as against them, a conveyance of the land by Silas Partin to Elijah Rhodes must be presumed.

Judgment reversed, and cause remanded to the circuit court for a judgment as above indicated.