## Glock's Admr. v. Weikel, et al.

(Decided June 20, 1912.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1.   Partnership—Accounting.—In an action by the representative of a deceased partner, not to rescind a contract, executed almost

fourteen years before, purporting to be a dissolution of the partnership and retirement of decedent therefrom, but for an accounting and distribution of the partnership assets, an accounting will be denied where, by reason of the long delay, the change of conditions and loss by defendant of evidence, the court cannot do full justice to the parties.

2. Equity—Laches and Stale Demands—Following Statute of Limitations.—Laches is a question of fact, to be determined by the circumstances of each case. Equity will refuse to enforce a stale claim, though it is not barred by the statute of limitations, where changed conditions would place defendant in a disadvantageous position, and delay will not be excused, either by aversion of plaintiff to litigation or by the fact that defendant· is a fiduciary or trustee, where defendant has repeatedly refused to recognize plaintiff's rights.

BENNETT H. YOUNG,.MARION W. RIPY and G. L. EVERBACK for appellant.

RICHARDS & HARRIS for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Prior to 1890, John Glock was the owner of a chair factory in the city of Louisville, Kentucky. In that year he and his wife conveyed that business to his son, Fred Glock and his son-in-law, Fred Weikel, for the stated consideration of $20,000, evidenced by notes. His said son and son-in-law at the time of the purchase, formed a partnership, which was continued under the name of "Glock & Weikel." Thus the business was conducted for about four years. Toward the close of this period, some differences arose between the partners, which resulted in the purchase of Weikel of Glock's interest,. and the retirement of Glock from the partnership. The agreement, by which this dissolution of partnership was effected, was evidenced by the following writing:

"This deed made by and between Fred Glock single, as party of the first part and Fred Weikel, as party of the second part, both of Louisville, Ky.

"Witnesseth: That the party of the first part for and in consideration of the sum of seven thousand two hundred dollars ($7,200.00) cash in hand paid and in further consideration that the second party assumes the payment of the lien notes mentioned in the deed made by John Glock and wife to Glock & Weikel, dated June 30, 1890, and recorded in Deed Book 351, page 408, and the second party also assumes the payment of the entire partner-

ship indebtedness and claims of every nature and description against the firm of Glock & Weikel, or in which the firm of Glock & Weikel may be decreed to be liable, and for and in consideration of said cash payment and the assumption and payment by second party of said lien notes and said partnership indebtedness or liabilities, the first party Fred Glock does hereby sell, grant and convey to the party of the second part, Fred Weikel, his undivided one half interest in the following described property, viz:

(Here follows description of real estate):

"The first party also conveys to the second party his entire undivided one-half interest in and to the partnership firm and assets of Glock & Weikel and his entire interest in and to said firm of Glock & Weikel and all the estate owned by said first party in said firm of Glock & Weikel, including stock and materials, finished and unfinished, and all the machinery and fixtures of every nature and description and all the accounts and choses in action, due or unsettled, and belonging to the said firm of Glock & Weikel, and also the good will of said partnership firm of Glock & Weikel, and said second party Fred Weikel assumes and he hereby does assume all liabilities of every nature and description against said firm and is empowered to carry on the business of said firm of Glock & Weikel hereafter in his own name of Fred Weikel and said partnership of Glock & Weikel is hereby dissolved and the said Fred Weikel, the second party herein, is the sole owner of all the estate of said partnership firm of Glock & Weikel both real and personal of every nature and description in fee simple and in his own name.

"To have and to hold the same with all the appurtenances thereon and the good-will in and to the same to the party of the second part, his heirs and assigns forever with covenant of general warranty.

"In testimony whereof witness the signature of the first and second parties this 24th day of August, 1894, at Louisville, Ky.

"FRED GLOCK,<br>
"FRED WEIKEL."

Thereafter, the business was conducted by Weikel, during a portion of the time as an individual, and during the remainder of the time, as a corporation. His right and title to the absolute ownership of the business was

not questioned until in 1911, when his father-in-law and brother-in-law had both died, and the United States Trust Co. as administrator of the estate of Fred Glock, instituted a suit in which it sought an accounting at the hands of Weikel upon the theory that in the conduct of the business, after the agreement above set out had been entered into, he was a trustee in fact for the benefit of the firm, and that the estate of his deceased partner, Fred Glock, was entitled to its share of the profits realized out of the conduct of the business during this period, covering more than sixteen years. The petition, after alleging that he had died intestate and unmarried, leaving as his heirs at law, his father, mother, brothers and sisters, and that the plaintiff had been appointed administrator, alleged that, at the time of his death, Fred Glock was the owner of an interest in the assets of the firm of Glock & Weikel; that the said firm had obligated itself to pay to John Glock $20,000; and that he had also loaned to each of the partners $5,000 and taken their notes therefor; that each of the partners had put into the firm's business the sum of $15,000; that it did a prosperous business; that on July 31, 1894, the share of Fred Glock was worth $26,698.10; that on said date, said Fred Weikel had falsely charged his partner with neglecting the firm's business and with appropriating partnership funds to his own use, to the injury of the business; that for the purpose of placing the said Weikel in control of the said business the said Fred Glock was induced to, and did, transfer to his partner his undivided interest in the partnership assets and business; that in consideration thereof, his note for $5,000 to his father, together with the partnership liabilities for which the said Glock stood bound, and certain individual indebtedness of Glock to the firm, should be paid off and discharged; that, after this was done, any sum found remaining due said Fred Glock should be paid over to him, or his agent; that after his retirement from the business, said Fred Glock was to have the right to have his sister, Katie, take monthly statements from the books until the partnership was finally settled up, and his share accounted for to him; that this arrangement was entered into by Fred Glock, because he was made to believe that it was impossible satisfactorily to conduct the business while he remained an active partner; and that believing that he was merely creating, in his brother-in-law, a trustee for the benefit of the firm, he executed the deed investing his brother-

in-law with title to the property; that there was no consideration, or at least a totally inadequate consideration, passing from his brother-in-law to him for his interest in the partnership business; that, in violation of said agreement, the said Weikel failed and refused to wind up the business according to their contract, understanding and arrangement, and continued to carry it on, though he made no report of the way and manner in which the business was being conducted, or the profits realized therefrom, to his brother-in-law, but that he collected, received and appropriated to his own use, all the profits realized out of said business, and withdrew large amounts of money from the business for his own private use, and failed and refused to account for, or pay over to his said brother-in-law, his share of the profits realized from said business. The prayer of the petition was for an accounting and settlement of the business.

A general demurrer was filed to the petition and sustained. The plaintiff declining to plead further, the suit was dismissed, and it appeals.

The writing set up in the petition, evidencing a dissolution of the partnership, was entered into in 1894, and, while it was treated by the parties as though it was a deed, it is apparent that it was, in fact, a dissolution of the partnership upon the terms then agreed upon between them. It was signed by both of them and, from its purport and necessary effect, must be treated as a contract. The effort now made is not to rescind the contract, but, while retaining the benefits received under it, to acquire still other benefits by reading into it other privisions, sought to be established by parol. The consideration which passed to appellant's intestate is not seriously disputed, so that, it may be said that Fred Glock, on said date, really received from appellee $7,200, or personal obligations of his to that amount were discharged, and he was, in addition, relieved from all liability on account of any indebtedness of the firm. The reasons which induced the retired partner to enter into the contract become unimportant, in the light of subsequent events recited in the petition. For, whatever may have been Fred Glock's understanding when he signed the writing, he must have known, when his former partner in 1895 refused to permit the books of the firm to be examined by his sister, that he was then not recognizing any right on the part of his former partner to get an insight into the condition or management of the business.

Nor is this all. He saw his former partner, in 1898, convert his business into a corporation under the name of F. Weikel Chair Company, and transfer all of the assets of the old firm of Glock & Weikel to it. Some of the stock in the corporation was afterwards placed in the hands of other persons, although appellee was perhaps the real or beneficial owner of practically all of it, which then amounted to $30,000. Later, the capital stock was increased to $69,000, and in 1906 the entire business and plant was sold to one A. J. Ross for $54,000. At that time appellee held and owned the major portion of the stock of the corporation, and, although it is alleged that the real understanding between the partners, at the time this contract was entered into, was that appellee should wind up the partnership business, neither Fred Glock nor those interested in his estate sought any information concerning the condition of the business or offered any objection to the way and manner in which it was being conducted. If they had any rights, they slept upon them too long. They should not have waited more than fourteen years before attempting to assert them, when they knew and saw daily evidences of the fact that appellee was not recognizing any right or interest of his former partner in and to the business. If a case was ever presented in which a chancellor would be justified in holding that a litigant had slept too long upon his rights, this is one. Fred Glock had died; his father was dead; the business, for more than twelve years before the institution of this suit, had been conducted, not by appellee, but by first one corporation for eight years, and then by another for four years. Other people had become interested. Conditions had so changed that it would now be altogether problematical as to what appellant's rights would be, if it should be held that he had any. It is to cases of this character that the doctrine of laches may be applied with peculiar force.

The object of appellant's suit is for an accounting. Its right to prosecute this suit, under the facts of this case, should be denied under the general equitable rule set out in 30 Cyc., 721, where the author says:

"Even when plaintiff's suit for an accounting, is not subject to the statute of limitations, it may be defeated by his laches especially if, by reason of his long delay, defendants have lost their evidence, or been placed in a disadvantageous position, or it has become impossible for the court to do full justice to both parties."

In Van Fleet v. Sledge, 45 Fed., 743, an accounting was denied one partner against the others, after the lapse of ten years from the date upon which they had satisfactorily adjusted the accounts between them.

In Philippi v. Philippi, 61 Ala., 41, it was held that aversion to litigation is no ecxuse for failing to sue, after twenty years. This is the ground chiefly relied upon by appellant, in explaining the long delay in instituting suit.

Again, in 16 Cyc., 150, the author says:

"Courts of equity, while sometimes bound by, and at other times following the analogy of, the statutes of limitation, also act independently of such statutes, refusing relief to parties, who have slept upon their rights, or have been negligent in asserting them."

This principle was recognized in the case of Madox v. McQuean, 3 A. K. Marsh., 400, where, in denying the plaintiff the relief sought, the court said:

"No relief will be granted to him, who, without excuse, has failed in his stipulations or has trifled with the contract by unreasonably delaying the performance of his part. This case, we conceive, comes within the influences of these principles, and furnishes an example where this extraordinary relief ought to be, and was properly refused by the court below."

See also Perry v. Perry, 98 Ky., 242; Miller v. Baxter, 17 Rep., 1371; East Jellico Coal Co. v. Hays, 133 Ky., 4; and Predestinarian Baptist Church v. United Baptist Church, 139 Ky., 110.

The question of laches is one of fact, to be determined by the circumstances of each case, and what is unreasonable delay in one case might not be considered such in another. But, we have found no case where the right to sue has been permitted to run until one of the parties is dead, and the conditions changed to the extent herein shown, which holds that the equitable doctrine of laches could not be applied. But, it is urged that appellee was acting in a fiduciary or trust capacity. His former partner might have so regarded the transaction, at the time it was entered into, but, when in 1895 appellee refused to permit the books to be examined, and made no accounting whatever to him, he must then have known that appellee was not recognizing his right to further participation in the business or its profits, nor can it be said that he was expecting appellee to wind up the business within two or three years, for, every act on the part of appellee relative to the business, evidenced just the con-

trary intent on his part. Possessed then, of this knowledge, Fred Glock, and those claiming under him, should have promptly asserted their rights; but, instead, they failed to do so, until after the lapse of about fifteen years and by so doing, lost whatever rights they may have had to demand an accounting. This was the view taken by the chancellor, and it was, in our judgment, correct. Judgment affirmed.