## Commercial Security Company v. Archer.

(Decided March 19, 1918.)

### Appeal from Whitley Circuit Court.

1. Bills and Notes—Holder in Due Course—Burden of Proof—Negotiable Instruments Law.—Under our negotiable instruments law, the holder of a negotiable note fair upon its face, and who obtained it before maturity, is prima facie a holder in due course, and the burden is upon the maker to show the infirmity constituting the vice in the instrument, and when done the burden is then cast upon the holder to show that he obtained the instrument in good faith without knowledge of the infirmity affecting the instrument, and that he did not take it under circumstances showing that he acted in bad faith.

2.  Bills and Notes—Pleading—Infirmity—Burden of Proof—Assignment.—When defendant's proof is sufficient under the rule above stated to cast the burden upon plaintiff it is not discharged by merely showing that the note was obtained for value before maturity without further testimony that plaintiff did not have knowledge of the facts constituting the infirmity, and proof that the payee and assignor represented that there was no defense to the note is not sufficient to show that the holder did not have knowledge of such infirmity.

3.  Bills and Notes—Fraud—Popularity Contest.—In an action to recover on notes given for the privilege of conducting a popularity contest in accordance with plans and instructions which were a fraud on the public, such fraud vitiated the notes and rendered them uncollectible in the hands of the payee or a holder with notice, and neither of them can recover in a suit on the notes, nor can the defendant obtain affirmative relief by counter-claim, since the parties are in pari delicto and the court will leave them where it finds them.

W. B. EARLY and ROSE & POPE for appellant.

H. C. GILLIS, B. B. SNYDER and J. B. SNYDER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part on the appeal, and affirming on the cross-appeal.

The American Manufacturing Company is a Tennessee corporation, but has an office in the city of Chicago, Illinois, from which it principally transacts its business, which is that of selling to merchants plans and premiums for popularity contests. The general plan of the contests which it sells and furnishes is to enlist the services of ladies who may be nominated as candidates in the contest to sell the wares of the merchant conducting it. The candidates are supposed to be entitled to one hundred votes for each dollar's worth of merchandise, or coupons calling for same, which they may sell. The contest is supposed to continue for one year, and at periods of four months during that time a prize of a piano is given to the candidate having the most votes at the expiration of the four months. There are also subsidiary prizes to be distributed to the contestants receiving the next highest number of votes to the winner.

On March 5, 1913, the company sold to the appellee and defendant below plans for such a contest, which included three pianos and all of the subsidiary prizes, to-

gether with blank coupons and books containing votes, and also a book of instructions giving directions as to how the contest should be conducted, and the way in which candidates should be nominated and kept active after being nominated. The company agreed in consideration of the purchase of the prizes and contest plan from it to guarantee an increase of one hundred per cent. in defendant's gross sales over the previous year, provided the contest should be conducted according to the plan which the company claimed was copyrighted. In consideration therefor the defendant executed to the company six notes for $200.00 each, payable in four, five, six, seven, eight and nine months thereafter.

The appellant and plaintiff below, Commercial Security Company, is also a corporation created under the laws of the State of Illinois, and doing business in Chicago, and it claims that on April 18, 1913, it purchased from the payee in due course all of the six notes which defendant executed, and as such it filed this suit against the defendant to recover on three of the notes, two of which had been paid and the other not being sued upon.

For defense it was denied that plaintiff was a holder in due course of either of the notes; that they were executed without consideration, and were procured by "fraud, covin and deceit on the part of the American Manufacturing Company;" and that it was "a fraudulent concern, and doing a fraudulent business, and taking and selling notes procured by fraud," and that plaintiff had knowledge of such facts vitiating the notes at the time it procured them.

The answer was made a counterclaim in which defendant sought the affirmative relief of cancellation of the note not sued on and a recovery of the $400.00 previously paid in settlement of two of them. A reply put in issue the allegations of the defensive pleas, and upon trial the jury under instructions from the court returned a verdict for the defendant, followed by a judgment dismissing the petition and cancelling the unpaid note, but the court declined to give judgment in favor of the plaintiff for the $400.00 which he had paid. From that judgment plaintiff prosecutes this appeal and defendant has obtained a cross-appeal in this court, complaining of the action of the trial court in disallowing his claim for $400.00.

In construing subsection 59 of section 3720b of the Kentucky Statutes, constituting our negotiable instruments law, this court and other courts construing similar statutes have universally held that the holder of a negotiable instrument transferred before maturity, which was fair upon its face, was *prima facie* a holder in due course, and that the burden was upon the defendant to prove the vice which he claimed rendered the note invalid or uncollectible, but that when this was done the burden shifted to the plaintiff to prove that he was a holder in due course. Campbell v. Fourth National Bank, 137 Ky. 555; Muir v. Eden, 156 Ky. 212; Barnard v. Napier, 167 Ky. 824, and McKinzie v. Eschmann's Ex'ors, 174 Ky. 450. Under this rule it was incumbent upon defendant to introduce proof showing the fraud which he claimed rendered the notes sued on uncollectible. The proof which he offered in support of that contention was the book of instructions under which the contest was to be conducted, and it contained directions whereby candidates might be nominated without receiving any votes and should be credited with votes which they had never received. The false credit given to the candidates was of course for the purpose of keeping them in the contest, and to encourage them and their friends to continue to work for the merchant with the hope that they might finally succeed in winning the capital prize.

The plan adopted in this case is similar to, if not an exact duplicate of, the one involved in the case of American Manufacturing Co. v. Record-Press, 166 Ky. 548. In the opinion in that case excerpts are made from the book of instructions which clearly set forth the fraudulent plan and general scheme of the contest, and we will not encumber this opinion with similar excerpts from the book of instructions furnished in this case showing the same fraudulent method and plans sold to the defendant by the same company for conducting his contest. In the case referred to such fraudulent scheme and plan whereby the candidates and their friends are deceived into continuing the solicitation of votes was denounced as being vicious in the extreme, and it was held that no cause of action would be allowed to either party for violating the contract or refusing to pay any obligation executed as a part of it, the court saying:

"We regard further discussion of the plan as unnecessary. It speaks for itself. It is founded on deceit and misrepresentations. It is no defense to all this to say that in the end the complimentary votes are equalized and the contestants are put on the same footing. That may be true, but all during the contest they have served their purpose by deceiving the contestants and the public in general. We do not doubt that voting contests may be fairly planned and fairly conducted, but a plan like this, that is based on falsehood and deceit, and operates as a fraud, not only on the contestants themselves, but on the public in general, who, relying on the misrepresentations, are led to come to the assistance of their friends and spend money unnecessarily in their behalf, should not receive the sanction of the courts, and any contract based on such a fraudulent scheme is in violation of good morals, inconsistent with honest purposes, against public policy and will not be countenanced by the law or by the tribunals which administer the law. From such a foundation no cause of action can arise. Courts will not authorize a recovery by either participant, nor will they restore to either anything that he may have paid to the other. The parties will be left exactly where they have placed themselves. Snead v. Williamson, 16 B. Mon. 492; Chapman v. Haley, 117 Ky. 1004; 25 Ky. Law Rep. 2182; 80 S. W. 190; Howe's Exor. v. Griffin's Admr., 126 Ky. 373."

This case is on all fours with that one, the doctrine of which we unhesitatingly readopt. Such contracts are not only fraudulent and against public policy, setting at defiance the rules of equity, fairness and justice which should characterize transactions between man and man, but they go further and render the participants in the fraudulent scheme almost if not quite guilty of obtaining property under false pretenses, since the friends of the contestants are induced to expend their money in purchasing votes under the belief that their friend, the candidate, has an actual standing as a probably successful one, when in truth their votes are largely if not entirely fictitious. The crediting of the candidate with such fictitious votes constitutes a pretense by the merchant of the existence of a fact which is wholly untrue. That this method of conducting the contest entered into the contract and became a part of it there can under the proof be no question, so that we again repeat that the Record-Press case is in harmony with the fundamental

principles of the law governing contracts and transactions between men, as announced by all the text writers upon the subject, and meets with our unqualified approval. So that our conclusion is that defendant successfully sustained the burden which the law cast upon him, and established by his proof that the consideration for the notes sued on was vicious, and sufficiently so to defeat the collection of the notes in the hands of the original holder. It, therefore, became necessary under the rule, *supra*, governing the rights of the parties for plaintiff by its proof to bring itself within the definition of a *bona fide* holder in due course, as prescribed by subsection 52 of the section, *supra*, of the statutes. To do this it was incumbent upon it to prove that the notes were complete and regular upon their face; that it became the holder of them before they became overdue; that it took them *in good faith*, and for value, and that at the time they were negotiated to it plaintiff had no notice of any infirmity in either of the notes, or of any defect in the title of the American Manufacturing Company. In an effort to discharge that burden it took the deposition in Chicago of its president, R. A. Crandall. He testified that he negotiated the transaction resulting in the purchase of the notes; that he purchased them for his company at a discount from the face value of six per cent. and paid for them at the time. The notes themselves show that they are regular upon their face, and there is no claim that any of them had ever been previously dishonored. Upon the point as to whether the notes were acquired in good faith, i. e., *without actual knowledge* of the infirmity or defect, or without knowledge of such facts that plaintiff's action in taking them amounted to bad faith, the witness is entirely silent. He was asked and answered these questions:

"Q. Please state what examination you made, if any, before you decided to purchase the notes executed by J. D. Archer? A. We checked up the maker of the notes; we checked up the commercial rating of the maker of the notes, and we also checked up the rating of the American Manufacturing Company. Q. After you checked up the commercial rating of J. D. Archer and the American Manufacturing Company, what did you then decide to do? A. To purchase the notes. Q. I will ask you to state whether or not your examination em-

braced anything further than ascertaining the commercial rating of J. D. Archer and the American Manufacturing Company? A. It did not."

The witness nowhere states that he did not have knowledge of the vice entering into the consideration for the notes above alluded to, but counsel attempts to avoid the omission because of statements made by the American Manufacturing Company in its contract transferring the notes to plaintiff, in which the company among other things guaranteed to plaintiff "that there are no contra accounts against any of them (notes); that the amounts due on said notes . . . . are not disputed by the debtor . . . . and that there are no offsets against said notes, damages or other counterclaims of any nature whatsoever." But these guarantees were at most but representations made at the time by the seller to the contemplated purchaser. It would have been in perfect accord with good business principles for such a guarantee to be demanded, notwithstanding the prospective purchaser may have had actual knowledge of the infirmity of the paper about to be purchased. Indeed such a guarantee would most likely have been demanded under such conditions. The fact that the representations were made does not relieve the holder of the burden to show that he purchased the notes under the conditions named in subsection 56 of section 3720b of the statutes, *supra,* one of which is that he did not have *actual knowledge* of the infirmity of the notes. Such actual knowledge is entirely consistent with the representations made in the written transfer, the latter not in the least disproving the former. Holzbog v. Bakrow, 156 Ky. 761.

In the McKenzie case, *supra,* referring to the necessity for the holder to show his want of knowledge of the infirmity of the instrument when the burden is cast upon him, the court said:

"Here McKenzie *failed* to testify that *when* he purchased the note he had no knowledge of the fraudulent representations alleged to have been made by Patterson. From the above evidence the chancellor concluded that the note in question was obtained by fraud, and as plaintiff *did not rebut* the *prima facie* case made out by the defendant he further held that plaintiff *did not* sustain the burden of showing that he was a holder in due course."

The holding of the chancellor who tried that case, touching the rule of practice and the proof required of the holder under the conditions, is approved in the opinion, but this court found that the evidence was insufficient to establish fraud in the procurement of the note. The rule is correctly stated if the facts were sufficient to authorize it. 3 R. C. L. 1033-1034, and cases, *supra.*

In the case before us there is no doubt about the establishment of the fraud, and there is but little less doubt about the failure of the plaintiff to sustain the burden to prove that it was a purchaser *in good faith.* The fact that plaintiff paid a consideration for the notes is insufficient of itself to show, under the facts of this record, that it did not have actual knowledge of the fraud entering into the consideration of the notes. 8 Corpus Juris. 506.

Complaint is made of the instruction given to the jury, but it in very apt language submitted the issues in the case and is wholly free from error; but if otherwise, we could not reverse the judgment in favor of defendant based upon the verdict of the jury, because under the record the court was authorized to sustain the motion for a peremptory instruction in defendant's favor. We think the testimony is sufficient to show, as was held in the Record-Press case, *supra,* that defendant was in *pari delicto* with the American Manufacturing Company, and therefore not entitled to the relief which he sought by his counterclaim.

This is an ordinary action, and was docketed and tried as such, and it was incompetent for the court to undertake to cancel the unpaid note, since such relief can be granted in equity alone, but for the reason stated no such relief should have been granted had the case been transferred to equity. For the same reason the court did not err in refusing to allow a recovery in favor of the defendant of the $400.00 paid in extinguishment of two of the notes by declining to instruct the jury on that issue.

It is seriously insisted by plaintiff's counsel that defendant was guilty of laches which would bar him from making the defense herein, but that doctrine applies to the remedy of rescission, reformation, or other equitable relief, and has no application in an ordinary suit to recover on the obligation executed for the purchase price of the article sold where the fraud may be relied on as

a complete or *pro tanto* defense whenever the suit is brought.

· Because of the conclusions which we have reached, as hereinbefore expressed, it will be unnecessary to consider the competency of the records of the Logan circuit court introduced by the defendant and objected to by the plaintiff, since the judgment is correct independent of any effect which that proof may have had.

Wherefore, the judgment upon the appeal, in so far as it dismissed the petition, is affirmed, but in so far as it cancelled the unpaid note, it is reversed, and upon the cross-appeal the judgment is affirmed.