## Gover's Adm'r et al. v. Dunagan.

Dec. 15, 1944.

Gladstone Wesley and B. J. Bethurum for appellants.

H. C. Kennedy for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

Appellee, Ed Dunagan, instituted the action against Lucy Gamblin, administratrix of the estate of J. B. Gover, deceased; Lucy Gamblin, individually; and Walter Gover. Recovery is sought of the administratrix on a claim evidenced by four written promissory notes, three in the amount of $1,000 each, and one in the amount of $400. The basis of the suit was a new promise to pay the notes made after the expiration of fifteen years from the dates they were due. In the petition appellee alleged that the decedent's personal estate was not sufficient to pay the debt sued on, and asked that certain real estate which descended to appellants, Lucy Gamblin and Walter Gover, heirs, be sold to satisfy the claim sued on. By amendment to the petition, appellee alleged that the Gover estate was insolvent; asked that the estate be settled; and prayed that the claim sued on be satisfied by a sale of the real estate, and recovery over in the amount of the personal property which theretofore had been distributed to appellants be had. By answer appellants denied the allegations of the petition; pleaded payment in full; and interposed the fifteen year statute of limitations. A demurrer to the plea of limitations properly was sustained, and about which no complaint is now made. By amended answer appellants set up a plea of laches, to which a demurrer was sustained, over the objection of appellants, and to which ruling of the Court an exception was taken. The action was brought in equity; but, on motion of appellants, was transferred to the ordinary docket for trial of the issue raised in respect to the validity of the debt. The jury returned a verdict in favor of appellee on the entire claim sued upon; judgment was entered accordingly. After the rendition of the verdict appellants moved the Court for a judgment notwithstanding the verdict, which was overruled; whereupon, appellants filed motion and grounds for a new trial; this motion likewise was overruled. The appeal is based upon two contentions: (1) The Court erred in sustaining a demurrer to the plea of laches; and (2) the verdict of the jury is flagrantly against the evidence, and is shown to have been rendered under the influence of passion and prejudice.

It is argued by appellee that the demurrer to the plea of laches was properly sustained, because the plea applies exclusively to equitable jurisdiction, and the case having been transferred to the ordinary docket to try the issue of the validity of the debt the plea was not available. It is argued, on the other hand, that since the jurisdiction of an equity court was sought for the enforcement of the claim, equitable defenses are available, as a matter of right.

The doctrine of laches has been defined to be such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less extensive, and other circumstances causing the adverse party to be prejudiced, operates as a bar to the petitioner's right to recover in a court of equity. In respect to issues of which courts of equity have exclusive jurisdiction, where the enforcement of the claim depends upon the conscience of the chancellor, equity may refuse by applying the doctrine of laches, even though the claim be not barred by the statute of limitations. Glock's Adm'r v. Weikel, 149 Ky. 170, 147 S. W. 897; Culton et al. v. Asher et al., 149 Ky. 659, 149 S. W. 946; Klineline v. Head et al., 205 Ky. 644, 266 S. W. 370; Phillips v. Phillips, 294 Ky. 323, 171 S. W. 2d 458. But where the issue involved is a legal one and does not lie within the breast or on the conscience of the chancellor, the statute fixing the limitation establishes the rule to be applied, and the defense of laches may not be interposed. Barrett et al. v. Mutual Life Ins. Co. of New York, 85 S. W. 749, 27 Ky. Law Rep. 586; Citizens' Trust & Guaranty Co. v. Peebles Paving Brick Co. et al., 174 Ky. 439, 192 S. W. 508; Commercial Security Co. v. Archer, 179 Ky. 842, 201 S. W. 479.

On issues of which courts of equity and courts of law have concurrent jurisdiction, the statute of limitations will be applied by the court of equity precisely as it operates at law. Lexington Life, Fire & Marine Ins. Co., etc., v. Page, 56 Ky. 412, 453, 17 B. Mon. 412, 453, 66 Am. Dec. 165; Vansant's Ex'x v. Gardner's Ex'x, 240 Ky. 318, 42 S. W. 2d 300. The rule in respect to issues of which the courts of law and courts of equity have concurrent jurisdiction is clearly and succinctly stated in Pomeroy's Equity Jurisprudence, 5th Ed., vol. 2 sec 419e, pp. 180 and 181, which reads: "It is frequently held that where a legal right is involved, and upon ground of equity jurisdiction, the courts have been called upon to sustain the

legal right, the mere laches of a party, unaccompanied by circumstances amounting to an estoppel, constitutes no defense. As has been expressed, 'if a legal right gets into equity, the statute governs.' Accordingly, it is held that if the statute might be pleaded by the defendant, the equity court will hold the suit to be barred. On the other hand, if the statutory period has not run, the suit will not be barred; the statute of limitations rather than the doctrine of laches is applicable. If, however, the cause is one of which courts of chancery take exclusive cognizance, the statute will not necessarily be applied.''

The issue to which the plea of laches is directed in this case is the controverted claim against the administratrix arising out of a new promise to pay the debts originally evidenced by notes executed in the years 1921 and 1926. This is not an issue which lies within the breast or on the conscience of the chancellor to enforce, but is a legal right, the jurisdiction of which has been obtained by a court of chancery by reason of its joinder with another issue of exclusive equitable jurisdiction. That being true, it is an issue of which the court of chancery and the court of law have concurrent jurisdiction; and, under the rules recited above, the rights of the parties must be determined by the statute of limitations, and not by the doctrine of laches. From what has been said, it is apparent the Court did not err in sustaining a demurrer to the plea.

The contention that the verdict of the jury is flagrantly against the evidence, and is shown to have been rendered under the influence of passion and prejudice, is without merit. Appellee introduced four witnesses who testified positively that they heard the decedent promise appellee, in August, 1940, to pay the debts sued on. Both appellants and two other witnesses testified that the original notes were in the possession of Mr. Gover at the time of his death, and remained in the possession of appellant, Lucy Gamblin, for a short time thereafter, when they disappeared. They further testified that appellee had an opportunity to steal the notes after the death of Mr. Gover; although there is no evidence that he did so, except that he was in possession of the notes at the time he brought suit. Appellee introduced several witnesses who testified that they had seen the notes in the possession of appellee during the period of time appellants contend they were in the possession of Mr. Gover and appellant, Lucy Gamblin. All the witnesses for appellee, ex-

42

cept one, were his relatives by blood or marriage; all of the witnesses for appellants were their blood relatives. Lucy Gamblin introduced books of account of the decedent, wherein were recorded four entries on different dates purporting to show the notes on the respective dates to have been paid and "taken up." This evidence was rendered competent by Lucy's testimony that appellee was present on each of the occasions these entries were made. Appellee denied this testimony. Great reliance is placed by appellants upon the value of this so-called record evidence; it being argued that the record shows conclusively that the notes have been paid. This Court takes a different view to that urged by appellants. To say the least, we look upon the evidence with a great deal of suspicion, because Lucy Gamblin admitted each of the four entries to have been in her handwriting, and admitted that, although other entries in the record book of the deceased were made on each of the days the entries referred to were made, the latter were the only ones made in her handwriting, and the only ones not made in the handwriting of the decedent. There is no evidence in the record that Lucy ever made any other entry on her father's books. Her testimony that appellee was present when she made the entries rendered the evidence admissible; but her admissions related above leave in our minds at least a doubt of the veracity of the entries. Not only do we conclude that the evidence was sufficient to sustain, but we are of the opinion that it overwhelmingly supports the verdict of the jury.

The judgment is affirmed.

Whole Court sitting.