## Denison v. McCann et al.

October 29, 1946.

J. W. Clements for appellant.

J. Verser Conner and Cyril C. Sehlinger, of Burke, Sehlinger & Burke for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

The action was instituted by appellant against her brother and sisters, seeking to set aside a deed executed and delivered by their mother to the first named appellee. Appellant's contention is that the transaction was the result of the exertion of undue influence upon the mother. The deed was executed approximately eighteen months before the death of the grantor, and promptly was delivered to the grantee, who immediately caused it to be recorded in the office of the Clerk of the Jefferson County Court. Appellant admitted in her testimony that she learned of the transaction and examined the recorded copy of the deed a few days after delivery; that she thought the deed was not "a good deed," because it "did not show any consideration and I thought if I kick now they will take the deed back and make one that will stick." Her testimony further shows that she then was acquainted with all the alleged facts she now relies upon to set the deed aside. After this testimony was

introduced, appellees filed an amended answer to conform to the proof, and pleaded laches as a bar to appellant's right to recover. The Court dismissed the petition on the merits of the case, but did not pass on the plea of laches. On this appeal, we are asked to affirm the judgment on its merits, the plea of laches, and a third contention which it will be unnecessary for us to consider.

Appellant contends that the findings of the Master Commissioner and the judgment of the Court are contrary to the law and the evidence, and urges reversal upon this contention. Further, she invites us to examine the record for other errors, a request we invariably decline to grant; although, if errors are present and specifically had been pointed out, the case could not be reversed, because of our conclusion that appellees' contention in respect to laches must be upheld.

In 19 Am. Jur., Sec. 511, p. 355, it is said:

"The prejudicial situation in which the complainant's suit places the defendant may be occasioned by inability on the part of the latter, because of the complainant's delay in asserting his claim, to produce evidence in defense thereof, where matters of proof have been lost, witnesses have died, and the transaction giving rise to the suit has become obscured by the lapse of time. Furthermore, relief may be denied where it appears that one who participated in the disputed transaction has died or has suffered impairment of memory or mental faculties."

This reasoning has been adopted by this Court in City of Paducah v. Gillispie et al., 273 Ky. 101, 115 S. W. 2d 574, 575, wherein we said:

" 'Laches' in its general definition is laxness; an unreasonable delay in asserting a right. In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party. Thus there are two elements to be considered. As to what is unreasonable delay is a question always dependent on the facts in the particular case. Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while a similar period under other circumstances may not. What is the equity of the case is the controlling question. Courts

of chancery will not become active except on the call of conscience, good faith, and reasonable diligence. 10 R. C. L. 395. The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right. 21 C. J. 212; Glock's Adm'r v. Weikel, 149 Ky. 170, 147 S. W. 897."

The same principles have been adopted by other courts of last resort: notably, the Supreme Court of the United States. In Mackall v. Casilear et al., 137 U. S. 556, 11 S. Ct. 178, 181, 34 L. Ed. 776, Chief Justice Fuller wrote:

"The doctrine of laches is based upon grounds of public policy, which requires for the peace of society the discouragement of stale demands; and where the difficulty of doing entire justice by reason of the death of the principal witness or witnesses, or from the original transactions having become obscured by time, is attributable to gross negligence or deliberate delay, a court of equity will not aid a party whose application is thus destitute of conscience, good faith, and reasonable diligence. Jenkins v. Pye, 12 Pet. 241 (9 L. Ed. 1070); McKnight v. Taylor, 1 How. 161, 168 (11 L. Ed. 86); Godden v. Kimmell, 99 U. S. 201 (25 L. Ed. 431); Lansdale v. Smith, 106 U. S. 391, 1 S. Ct. 350 (27 L. Ed. 219); LeGendre v. Byrnes, 44 N. J. Eq. 372, 14 A. 621; Wilkinson v. Sherman, 45 N. J. Eq. 413, 18 A. 228. The time for this son to have attacked his father on the ground of fraud was prior to that father's death; yet no movement was made to set aside these alleged fraudulent conveyances, until five years after that event transpired. The father died testate, and by his will the property in controversy, subject to the Casilear conveyances, passed to the brothers and sisters of complainant, as the father's devisees, who were natural objects of the bounty of the testator, and, so far as this record shows, entitled to his consideration. The allegations of the bill fall far short of discharging the burden, which rested on the complainant, of satisfying the court that his delay had not operated to the prejudice of these parties."

In the Gillispie case, two years and nine months elapsed before action was taken; and in the Mackall case, five years elapsed. But the extensiveness of the delay is not as material as is the fact that the delay has

operated to the prejudice of those against whom the right of action is asserted; and especially is this true where action deliberately is delayed for the purpose of working a prejudice against the adversary.

That appellant in this case deliberately delayed taking any step to set aside the conveyance in the lifetime of her mother cannot be disputed: she testified to this fact. Neither can it be disputed that her delay has closed the mouth of the principal participant in the transaction she is questioning. The time for the daughter to have attacked her mother's action in executing the deed was prior to the mother's death, as the Supreme Court pointed out in the Mackall case, supra. It is apparent that the doctrine of laches should be applied.

In view of this conclusion, we deem it unnecessary to detail the evidence; but, since we have concluded that the Master Commissioner and the Chancellor correctly decided the case on its merits, we will adopt the following opinion of the Chancellor as our opinion on that phase of the case:

"This is an action by Cleo McCann Denison to set aside a deed made September 1, 1942, by her mother, Martha Leah McCann, then about eighty-two years of age, to another daughter, Alma Effie McCann, on the grounds of undue influence and lack of mental capacity. The court listened to a long argument in this case, has carefully reviewed the evidence and considered the briefs of counsel, and is convinced that the plaintiff has failed to substantiate the allegations of her petition. It will serve no good purpose to set out in detail in this opinion the evidence, but it is sufficient to state that all of the witnesses who were in a position to know the true state of affairs which have existed in the home of the parties involved, testified in no uncertain terms, that Martha Leah McCann, although an uneducated person, was nonetheless intelligent and mentally capable at an advanced age; and at the time of the execution of the deed, to know the objects of her bounty, her duty towards them and the nature and value of her estate. The medical proof offered by the defendant is notably overwhelmingly superior to that of the plaintiff. The family physician, Dr. Koch, who had treated her for twenty-five years, was in a better position to know what Martha Leah Mc-

Cann's mental capacity was in 1942 than Dr. Crutcher who saw her once in his life, and that was in 1939, three years before she executed the deed. Furthermore, the motive behind the act of the mother is clear and natural. Alma, the only child to remain single, whether through choice or otherwise is not material, was closer to the mother's heart than the others who having married had forsaken father and mother and found others upon whom they bestowed their affections. Alma alone had remained faithful to her parents and to the home which they had founded. This should not be considered as a criticism or a condemnation of the married children's course as God and nature would not have it otherwise. However the natural tendency of the mother was to provide for her unmarried daughter who throughout her adult life had helped to comfort and sustain her. There is not a line of testimony to combat the proof of Alma's devotion and care of her mother. The whole of plaintiff's fire is directed not against Alma, but against Mrs. Cook, Mrs. Hettich, Ford Hettich, Dr. Frank McCann and Catherine McCann. That is the fatal weakness of plaintiff's case. The exceptions to the Commissioner's report are over-ruled.''

The judgment is affirmed.