**Diana L. HINKLE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2001–CA–001308–MR.

Court of Appeals of Kentucky.

June 28, 2002.

Case Ordered Published by Court of Appeals Aug. 30, 2002.

Discretionary Review Denied June 4, 2003.

J. Bart McMahon, Louisville, KY, for appellant.

Albert B. Chandler III, Attorney General, Todd D. Ferguson, Assistant Attorney General, Frankfort, KY, for appellee.

Before DYCHE, KNOPF, and McANULTY, Judges.

## OPINION

KNOPF, Judge.

In April 1998, a Bullitt County grand jury indicted Diana Hinkle and her husband Russell Hinkle for cultivating marijuana and possessing related paraphernalia. The couple was accused of maintaining a small growing operation (about twenty-five plants at the time of a police search in November 1997) in the basement of their residence. In February 1999, Russell pled guilty to felony cultivating[1] and was sentenced to three years' imprisonment. Diana pled guilty to facilitating Russell's operation[2], a class A misdemeanor. She was sentenced to two years' probation in lieu of twelve months in jail and was ordered to pay court costs of $65.00 and supervision fees of $10.00 per month.

A few months later, the Hinkles divorced. Diana was awarded the marital residence, and, despite financial difficulties, managed to maintain it until early 2001. Then, however, she defaulted on a second mortgage. The mortgagee foreclosed, and in March 2001 the residence was sold at public auction. Immediately thereafter the Commonwealth moved to forfeit about $55,000.00 of the sale proceeds, the amount remaining after satisfaction of the first mortgage. Diana and the second mortgagee objected to the forfeiture, both procedurally and on the merits, but by order entered June 6, 2001, the Bullitt Circuit Court granted the Commonwealth's motion. It is from that order that

Diana has appealed. She contends that the residence (and hence the sale proceeds) was not subject to forfeiture, that the Commonwealth's delay in seeking forfeiture barred its claim, that the forfeiture statute unconstitutionally imposed upon her the burden of proof, and that the forfeiture amounts to an excessive fine. We agree with Diana that the trial court was obliged to determine whether the forfeiture was excessive. We must remand, therefore, for that determination. In all other respects, however, we affirm the trial court's order.

■ As a preliminary matter, Diana observes that KRS 418.075 and CR 24.03 require that the Attorney General be notified of actions in which the validity of state statutes is challenged and that he be afforded an opportunity to intervene. On May 31, 2001, she duly notified the Attorney General that she was seeking to have portions of KRS 218A.410 and 218A.415 declared unconstitutional. The trial court entered its order upholding the statutes one week later, before there had been any response from the Attorney General. Diana contends that the trial court's ruling was thus premature and should be vacated. We disagree. While allowing the Attorney General a reasonable time to respond is the better practice, neither the statute nor the rule require the Attorney General to decline intervention expressly, nor do they establish a period of delay between the notice and the entry of judgment. They require only that notice be given prior to judgment, as it was in this case. The timing of the court's ruling certainly risked complicating the case if the Attorney General had wished to intervene. Nevertheless, Diana has failed to

---

1. KRS 218A.1423(2).

2. KRS 506.080.

identify any prejudice from the prompt ruling and so is not entitled to any relief.[3]

The substance of Diana's appeal concerns the forfeiture provisions of KRS Chapter 218A.[4] Those provisions provide in pertinent part that real property is subject to forfeiture if it

> is used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this chapter excluding any misdemeanor offense relating to marijuana, except that property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by the Commonwealth to have been committed or omitted with the knowledge or consent of the owner.[5]

■ Diana contends that because she was convicted of misdemeanor offenses relating to marijuana, this statute was not meant to apply to her or to her residence. Russell's felony, however, committed in the residence, brings the statute into play even with respect to Diana's interest in the realty if the Commonwealth establishes that Diana knew of or consented to that felony. Diana of course pled guilty to having facilitated it. She will not now be heard to deny knowing of it and consenting to it. The trial court did not err, therefore, by ruling that the residence was subject to forfeiture.

Diana next contends that the forfeiture provisions are inconsistent with the constitutional guarantee of due process because they impose on her the burden of proof. She points to KRS 218A.415(3)(a)2 as the basis for her contention, but that section is inapt. It addresses pre-forfeiture seizure. It provides that real property may be seized prior to a "final judgment and order of forfeiture"[6] only upon order of the court and further provides that such order may be issued only if "seizure is necessary to preserve the property pending final judgment"[7] and only if the Commonwealth has shown "the existence of probable cause for the forfeiture of the property and the necessity of the seizure."[8] If the Commonwealth makes those showings, an owner opposing a preliminary seizure then has the burden of showing "by a preponderance of the evidence that the property is not subject to forfeiture."[9]

■ Neither KRS 218A.415(3) nor 218A.410(1)(k) states who has the burden of proof and what is the standard of proof for a "final judgment and order of forfeiture" of real property instrumental in a drug crime. The general rule, of course, is that the proponent of a proposition bears the burden of proof.[10] We see no reason to deviate from that rule here. The Commonwealth, therefore, as the proponent of the forfeiture, has the initial burden of proving the forfeiture's propriety. The owner, then, as usual, has the burden of establishing any affirmative defense. The standard of proof, we believe, is by a preponderance of the evidence. That is the general rule, and the General Assembly has expressed no intention to deviate from the general rule here, as it has done in other sections of the forfeiture statutes.[11] This burden and standard, we believe, satisfy the demands of due process. We also believe that the Commonwealth met its

---

**3.** CR 61.01.

**4.** KRS 218A.405–218A.460.

**5.** KRS 218A.410(1)(k).

**6.** KRS 218A.415(3).

**7.** KRS 218A.415(3)(a)1.

**8.** KRS 218A.415(3)(a)2.

**9.** *Id.*

**10.** *Morgan v. Blue Cross & Blue Shield of Kentucky, Inc.,* Ky., 794 S.W.2d 629 (1989).

**11.** *See e.g.* KRS 218A.410(1)(j).

burden in this case. Russell's and Diana's guilty pleas establish that the property was used in part to facilitate the commission of a qualifying offense and that Diana knew of and consented to that use. Diana was not denied the due process of law.

■ Even if the forfeiture statutes are valid, Diana contends, the Commonwealth's long delay in asserting them should bar its claim. The alleged offense occurred in November 1997, Russell and Diana pled guilty in December 1998, and yet the Commonwealth did not initiate forfeiture proceedings until March 2001. In the meantime, Russell withdrew his interest from the residence and Diana made new contributions to it. The Commonwealth's delay, Diana maintains, renders the forfeiture inequitable.

■ Although Diana's contention has some appeal, we are not persuaded that she is entitled to relief. The forfeiture provisions of KRS Chapter 218A do not include a limitations period,[12] but KRS 413.120(3) establishes a period of five years for "[a]n action for a penalty or forfeiture."[13] The Commonwealth's motion came within five years of the offense, so it was timely even if the offense was the initiating event. Generally, of course, where the legislature has named a limitations period by statute, a court will not vary the period in equity.[14] There was no

reason do to so here. Diana was on notice even before her guilty plea that the Commonwealth considered the residence forfeit. She could have initiated proceedings at any time to have the issue resolved. That she chose not to do that but chose instead to gamble on the Commonwealth's forbearance, is not enough to overcome the Commonwealth's statutory right. Nor do the federal cases she has cited alter this conclusion. Those cases all concern delays after the government had seized the allegedly tainted property. Here there was no pre-forfeiture seizure, so the constitutional issues involved when there has been such a seizure did not come into play.[15]

■ This is not to say, however, that the circumstances of a forfeiture have no bearing on its propriety. It is now well established that punitive forfeitures such as this one implicate the excessive-fines clauses of the federal and state constitutions.[16] Not only must the trial court determine that the property is sufficiently tainted by the criminal act to be subject to forfeiture, it must also determine that the particular forfeiture is not grossly disproportionate to the particular offense.[17] Among the factors relevant to this determination are the gravity of the offense, the potential penalties, the actual sentence, sentences imposed for similar crimes in this and other jurisdictions, and the effect of the forfeiture on innocent third parties.[18]

12. KRS 218A.450(10), however, does provide that the term of notice for a forfeiture lien is six years with the possibility of a six-year renewal. Although this statute does not settle the limitations-period question, it is not inconsistent, at least, with a five-year limitations period.

13. *See Bailey v. Runyon*, Ky., 293 S.W.2d 631 (1956).

14. *Gover's Administrator v. Dunagan*, 299 Ky. 38, 184 S.W.2d 225 (1944); *Karami v. Roberts*, Ky.App., 706 S.W.2d 843 (1986).

15. Annotation, *Delay Between Seizure of Personal Property by Federal Government and In-*

*stitution of Proceedings for Forfeiture Thereof as Violative of Fifth Amendment Due Process Requirements*, 69 A.L.R. Fed. 373 (1984).

16. *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); *Commonwealth v. Fint*, Ky., 940 S.W.2d 896 (1997).

17. *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998).

18. *Commonwealth v. Fint, supra; United States v. Real Property Known and Numbered as 415 East Mitchell Avenue, Cincinnati, Ohio*, 149 F.3d 472 (6th Cir.1998); *Rabern v. State*

■ Diana maintains that a $55,000.00 forfeiture is excessive in this case. Although she raised the proportionality issue in the trial court, the court's order does not address it. The order suggests rather that the trial court considered only whether the property was sufficiently tainted. This was an error. Accordingly, we must vacate and remand. On remand, the court's proportionality analysis should take into account Diana's having committed only a misdemeanor, the removal of Russell's interest from the residence, and Diana's post-offense contributions to the equity.

We have considered Diana's other claims of error and believe them to be without merit. For the reasons discussed, we vacate the June 6, 2001, order of the Bullitt Circuit Court and remand for additional proceedings so that the court may assess the proportionality of the forfeiture. In all other respects, the circuit court's rulings are affirmed.

DYCHE, Judge, concurs.

McANULTY, Judge, concurs in result.

of Georgia, 242 Ga.App. 804, 531 S.E.2d 373 (2000); *State of Utah v. Real Property at 633 East 640 North, Orem, Utah,* 994 P.2d 1254 (Utah 2000).