## Davis, et al. v. Bush.

(Decided March 9, 1923.)

### Appeal from Wolfe Circuit Court.

1. Executors and Administrators—Purchase by Administrator at His Own Sale is Voidable.—An administrator cannot become the purchaser at his own sale of the property of his decedent, whether the sale be by judicial decree or made under a power of sale, and, if he purchases at such sale under a judgment procured by him, the deed to him is voidable.

2. Executors and Administrators—Reasonable Time Within Which Purchase by Administrator Must be Attacked Depends on Circumstances.—What is a reasonable time within which the heirs of a decedent must attack a purchase of decedent's property by his administrator depends upon the facts in the particular case, and such time in a case at which the property may fluctuate greatly in value in a short time would be shorter than in a case where there was no fluctuating value.

3. Equity—Gross Neglect Without Prejudice to Opposite Party May Defeat Claim.—Gross neglect or laches may alone operate to defeat a claim if the disturbance resulting from the establishment of the claim would make it a matter of public policy that the claimant shall abide the consequences of his own failure.

4. Executors and Administrators—Delay in Attacking Purchase by Administrator Held not Laches.—A delay of 4½ years by the heirs in attacking a purchase by the administrator, during which time the position of the parties had not changed, except that there had been a small development of oil on the property, and the administrator had not been induced to do or abstain from doing any act to his prejudice in reliance on the delay, does not show equitable estoppel through laches as a defense.

5. Executors and Administrators—Mere Delay of 4½ Years Does not Show Acquiescence in Purchase by Administrator.—The mere delay of 4½ years by the heirs in attacking the purchase by an administrator at his own sale, does not alone establish acquiescence by the heirs in the sale which bars an attack by them thereafter.

6. **Executors and Administrators—Facts Held not to Warrant Inference of Acquiescence in Purchase by Administrator.**—Where all of the heirs except one sister and a minor nephew were non-residents, and the administrator had assured the sister he would protect the interests of all the heirs, no inference of acquiescence in the purchase by the administrator of the property of decedent can be drawn from the failure of the heirs to attack the conveyance for 4½ years, during which time the deed to the administrator had not been recorded by him, so that the heirs were not charged with knowledge thereof.

7. **Executors and Administrators—Administrator is Chargeable with Profits and Rents on Avoidance of Deed to Him, and Entitled to Purchase Price and Expenses.**—Where a deed to an administrator is subsequently avoided by the heirs, his purchase must be treated as having been made for all the heirs, and he will be charged with the profits and rents from the land and credited with the expense of maintenance, and also the cost price, with interest.

E. C. HYDEN and O. H. POLLARD for appellants.

S. M. NICKELL, A. F. BYRD and C. F. SPENCER for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

Appellants, the plaintiffs below, are Isaiah Bush, Mary Davis, Lina Arnett, Sarah Chambers, brother and sisters, and Elmo Rogers, infant, nephew, of James Bush, deceased. They brought this action in the Wolfe circuit court against W. B. Bush, another brother and the remaining heir at law of James Bush, for a division of three tracts of land alleged to have belonged to James Bush at his death, which occurred in 1910. Appellee denied that appellants were the joint owners of the land or entitled to a division of it, and also denied that James Bush died seized of the first tract described in the petition, consisting of about eight acres. He alleged that he was the sole owner and held the legal title to all the land described in the petition.

The first tract contains eight acres and is referred to in the record as the home place. It was allotted to W. B. Bush in the division of the estate of John Bush, his father and the father of the four adult appellants. The second tract contains eighteen acres, having been allotted to James Bush in the division of John Bush's estate. The third tract contains about thirty-four acres and was purchased by James Bush from the Kentucky Union Company of Lexington, Kentucky. It appears in

the proof that shortly before James Bush's death he made an oral contract to purchase the eight acres allotted to W. B. Bush. There is, however, no satisfactory evidence in the record that the contract was ever consummated, and certainly no deed of conveyance was ever made.

When James Bush died he had little property besides the two tracts of land containing eighteen and thirty-four acres, respectively. W. B. Bush was appointed administrator of his estate. At that time Mary Davis was residing in Canada and Sarah Chambers then resided and still resides in the state of Idaho. Elmo Rogers was an infant of tender years and has not yet attained his majority. Isaiah Bush was the youngest brother. The remaining heir, Lina Arnett, lived in the community where her brother, W. B. Bush, resided. James Bush's land was mortgaged for $100.00, and after his death the holder of that mortgage instituted a suit in the Wolfe circuit court to foreclose the mortgage. W. B. Bush then filed a suit to sell the land and pay the debts of the decedent. The two suits were consolidated. The various heirs of James Bush were brought before the court. Lina Arnett, when served with summons, consulted W. B. Bush, who informed her that he was attending to the case for all of the heirs. She therefore made no preparation to look after her interest in the litigation. The land was sold by the commissioner of the circuit court in 1913, and W. B. Bush became the purchaser for $210.00. All the purchase money appears to have been consumed in paying the debts and the costs of administration. A commissioner's deed to W. B. Bush for the eighteen and thirty-four acre tracts was made immediately after the sale, but it was not recorded until about the time this suit was instituted. It is proper to say here that the deeds which James Bush held for these two tracts of land had been deposited by him for safekeeping at the county seat, and that W. B. Bush took possession of them after his appointment as administrator, but did not then have them recorded. The courthouse at Campton was burned a short time after the sale of the land to W. B. Bush, and presumably the record in the suit which he filed and which was consolidated with the foreclosure proceeding was destroyed. There were some records, however, that were saved. W. B. Bush testified that a few days before the land was sold he resigned as administrator of his bro-

ther's estate in order to purchase it. He also said that he made a settlement of his accounts. Neither statement, however, is sustained by the evidence, for the books in the office of the county clerk of Wolfe county, upon which a record of his resignation would have been noted and a record of the settlement of his accounts should have been made, were saved from the fire, and they contain no reference to his resignation nor any record of a settlement of his accounts.

After the filing of several amended petitions, appellants filed an amended and reformed petition, asking that the commissioner's deed be adjudged void and that appellee be required to account for the rents and profits from the land during the time he had held it under that deed. They were required to elect between the cause of action set up in their original petition and that asserted in their amended and reformed petition, and elected to rely on the latter. Judgment was rendered in the lower court, dismissing the petition and adjudging W. B. Bush the owner of the three tracts of land.

Appellants contend that the judgment is erroneous in that the deed on which it rests is void. Appellee contends that the sale was fairly made at a price that represented the full value of the land, and in those circumstances the deed is neither void nor voidable, but, if voidable when first taken, appellants are estopped by their laches from electing at this time so to treat it. Before discussing these contentions we should say that the evidence was not such as to warrant the belief that the eight acre tract was the property of James Bush at the time of his death, and as to that tract the judgment is right.

The purchase of the land by W. B. Bush must be considered in the light of the fact that he was then the administrator of James Bush's estate, for as we have seen the evidence does not show that he had been released from his obligations in that capacity. Having that in mind, and in view of the fact that the sale was made pursuant to a judgment rendered in a suit that he had brought as the personal representative of James Bush, and in respect to which, as the evidence shows, he had undertaken to safeguard the interests of the other heirs, it is at once apparent that as to them the deed was voidable. Price's Admr. v. Thompson, 84 Ky. 219; Charles, etc. v. Daniels, etc., 140 Ky. 379; Conrad, By, etc. v. Conrad, etc., 152 Ky. 422.

It is the general rule that an executor or administrator cannot become the purchaser at his own sale of the property of his decedent, whether the sale be by judicial decree or made under a power of sale. In Naylor v. Thomas, Trustee, 190 Ky. 588, this court cited many authorities in support of the rule, saying "that to permit an executor, trustee or other fiduciary having in charge trust property, to purchase it from himself, would allow him to create in himself an interest opposite to that of the party or parties for whom he acts, and at the same time a conflict between the self interest and integrity of the fiduciary, thereby furnishing both motive and opportunity for his profiting from his relations to the property as a trustee, at the expense of those it is his duty to protect." The doctrine is too well settled to require further discussion. It follows that the deed to W. B. Bush did not of itself divest appellants of the right to claim their beneficial interest in the land. It remains to be decided whether, as contended by appellee, they have been guilty of such laches as now estops them from asserting the right.

In respect to this question appellee relies on Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, in which it is said, "the option to avoid such a sale must be exercised within a reasonable time." It is asserted that four years elapsed before appellants elected to assert their claim that accrued at the time the sale was made, and it is argued that they did not act with reasonable diligence, and, not having done so, their rights are gone. Accepting the doctrine of the Marbury case, the question is, what is a reasonable time? That question is always dependent upon the facts in the particular case. A reasonable time in a case in which the property may be very valuable today and worth nothing tomorrow would be shorter than in a case where there is no fluctuating value. The latter is the case here. It is indisputable that gross neglect or laches may operate to defeat a claim if the disturbance resulting from the establishment of the claim would make it a matter of public policy that the claimant shall abide the consequences of his own failure. This doctrine was laid down in Spalding v. St. Joseph's Industrial School, 107 Ky. 382, where there is an exhaustive discussion of the subject. Among the many authorities cited with approval in that opinion is *ex parte* Adamson, 8 Ch. Div. 807, where it is said:

"Nobody ought to be estopped from averring the truth or asserting a just demand, unless by his acts or words, or neglect, his now averring the truth or asserting the demand would work some wrong to some other person, who has been induced to do something, or to abstain from doing something, by reason of what he has said or done, or omitted to say or do." Applying this rule, can it be said that appellants have slept on their rights so long that great or serious injury will be done to appellee by invalidating his deed? The obvious answer is they have not. The parties are precisely in the same position that they occupied when the sale was made, except that there has been a small development of oil on the property. That, however, has not operated to the detriment of appellee. He has not been induced to do anything or to abstain from doing anything by reason of the delay in the bringing of this action. This record does not present a case where the complainants have slept on their rights over a long course of years and the other party, relying on their acquiescence in his act, has expended large sums of money, made improvements, or done other things that have placed him in a position where a restoration of the rights of the parties would work a hardship on him. It is not a case, therefore, where the doctrine of equitable estoppel through laches is an applicable defense.

The remaining question is, has there been such acquiescence in appellee's purchase as will defeat a recovery? We do not think so; and we have been referred to no case in which a period of four and a half years has been regarded as such acquiescence as of itself constitutes laches. Certainly Elmo Rogers, who was at the time of the sale and is now an infant, has not lost his right. Besides, the circumstances disclosed by this record do not induce the belief that the brothers and sisters of appellee consented to his acquisition or retention of the property. It is in evidence, as we have remarked, that he informed one of his sisters that he would look after the suit for all of the heirs. Two of his sisters were not residing in the state and one of them has not resided here since her brother's death. The brother was much younger than appellee, and there is nothing to show that he consented to or approved the sale. The master commissioner's deed was not recorded until about the time this suit was brought, and until that time there was no record evidence of title in appellee. In these circumstances we

cannot hold that acquiescence and approval may be inferred from the lapse of time alone. Accordingly, appellee's purchase must be treated as having been made for all the heirs of James Bush. He will be charged with the profits and rents from the land, and credited with the expense of maintenance and also the cost price, with interest.

The judgment is reversed and the cause remanded for proceedings consistent with this opinion.