## City of Paducah v. Gillispie et al.

(Decided Feb. 15, 1938.)

W. V. EATON for appellant.

L. B. ALEXANDER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing in part and affirming in part.

In City of Paducah v. Gibson, 249 Ky. 434, 61 S. W. (2d) 11, it is shown that in February, 1932, in order to reduce expenses, the city commissioners of Paducah resolved that the fire department be decreased by ten men. Gibson and five others were among those let out. In their suit it was held that they were wrongfully discharged and were entitled to restoration because of seniority rights under Civil Service Law, Kentucky Statutes, sec. 339a-1 et seq.

Under the same resolution certain policemen were discharged, and in Singery v. City of Paducah, 253 Ky. 47, 68 S. W. (2d) 770, it was held that the policemen so removed were entitled to reinstatement and to recover their respective salaries during the period covered by their wrongful removal; it being shown that no other men had been appointed or had served in their places or been paid in their stead.

The cases were again before us under the style of City of Paducah v. Singery and City of Paducah v. Gibson, 255 Ky. 644, 75 S. W. (2d) 210. Other issues had been raised after the former decisions. It was held that certain of the discharged policemen and firemen were entitled to their salaries. Later, Gillispie, Davis, and Prince, who had been discharged under the same resolution as policemen, and Slaughter and Sheehan, as firemen, brought suits for restoration and their salaries. It was adjudged that Gillispie was entitled to

recover his position and his accumulated salary from the time he filed suit. It was adjudged that Sheehan, who was a fire captain at the time of his discharge, was also entitled to reinstatement as a fireman and to recover his salary as such; the court being of opinion that while the city had no right to discharge him altogether, it did have the right to reduce him in rank. Davis, Slaughter, and Prince were adjudged not to be entitled to relief. The city has appealed the judgment in favor of Gillispie and Sheehan. They cross-appeal so much of the judgment as limits the recovery of their compensation to the time of filing their suit, and Sheehan as refuses him a place as captain.

Gillispie's suit was not filed until November, 1934, which was after the last decision had been rendered affirming the judgment setting up seniority rights and the adjusted roster of the policemen. Recognizing the finality of the former opinions, the city makes no present claim of justification for Gillispie's removal. Among other defenses to his action it set up the judgment in the suit of Singery and his coplaintiffs, and alleged that Gillispie had actively participated in the prosecution of that suit without asserting his claim to seniority until long afterward, and was thereby estopped from doing so at this time. It also pleaded that soon after his discharge Gillispie had taken up his residence on his farm about ten miles from the city and because of his nonresidence he had become ineligible for membership in the police department. We pass over these grounds of defense with the statement that we do not find the facts disclosed by the evidence sustain them.

A plea of laches is asserted. It is predicated upon the proposition that Gillispie's delay in bringing suit worked an injury in this: That while he was standing by inactive, one of the junior policemen was retained and paid, which would not have been done had he seasonably asserted his rights; that the complement of the police force and the seniority of other men had been established in accordance with the ordinance, and to hold Gillispie entitled to the emoluments of the place would have the effect of increasing the force beyond that established by the ordinance and thereby disturb the city's finances.

"Laches" in its general definition is laxness; an unreasonable delay in asserting a right. In its legal significance, it is not merely delay, but delay that re-

sults in injury or works a disadvantage to the adverse party. Thus there are two elements to be considered. As to what is unreasonable delay is a question always dependent on the facts in the particular case. Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while a similar period under other circumstances may not. What is the equity of the case is the controlling question. Courts of chancery will not become active except on the call of conscience, good faith, and reasonable diligence. 10 R. C. L. 395. The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right. 21 C. J. 212; Glock's Adm'r v. Weikel, 149 Ky. 170, 147 S. W. 897.

With full knowledge of the facts and of pending litigation involving them, Gillispie did not join with most of his comrades similarly affected, or bring a separate suit to enforce his rights, but waited two years and nine months before bringing his suit. Though from time to time during the first year he amicably endeavored to secure reinstatement, he made no claim to any right of compensation. He was given a few days work as an extra policeman. It is inferable that during this period Gillispie did not sue as a matter of prudence or expediency, having hope of restoration. In such circumstances one is entitled to less favorable consideration. Thorn Wire Hedge Company v. Washburn & Moen Mfg. Co., 159 U. S. 423, 16 S. Ct. 94, 40 L. Ed. 205. After the year, he seems to have abandoned all efforts even to be reinstated. He does testify that he was advised by an attorney that the Singery suit had gone too far for him to intervene in it.

The public interest was and is involved.

"It is indisputable that gross neglect or laches may operate to defeat a claim if the disturbance resulting from the establishment of the claim would make it a matter of public policy that the claimant shall abide the consequences of his own failure. This doctrine was laid down in Spalding v. St. Joseph's Industrial School, 107 Ky. 382, 54 S. W. 200, 21 Ky. Law Rep. 1107, where there is an exhaustive discussion of the subject." Davis v. Bush, 198 Ky. 558, 249 S. W. 327, 329.

The call for the application of the doctrine of laches is perhaps greater because the legislative body

of the municipality, acting under unquestioned authority, in good faith reduced the number of men on the police force for the purpose of economy. The wrong was in the selection of the individuals dismissed. The city never increased the force afterward. Its fiscal operations were adjusted pursuant to its purpose. Therefore, that the interest of the taxpayers has been seriously affected and an extreme disadvantage worked upon the municipality seems apparent. Obligations were incurred, annual levies were made, taxes collected and expended by the city in reliance upon what it conceived to be its legal right, namely, to discharge Gillispie, and upon the reasonable presumption of his acquiescence in what had taken place.

We would not be understood as holding that public interest in every case affords a foundation upon which to rest a plea of laches, but may point to the converse principle that a municipality or government cannot be affected by the laches of its agents or estopped from asserting its rights because of the acts or omissions of its official servants. City of Winchester v. Board of Education, 182 Ky. 313, 206 S. W. 492; Vaughn v. City of Williamsburg, 245 Ky. 339, 53 S. W. (2d) 690. That rule is based upon public policy. The thought is that where the public rights are affected, or a municipality's affairs are disturbed, it is entitled to greater consideration in weighing the equities than where rights of individuals only are concerned. In such circumstances as are presented in this record, we think, being a public matter, the discharged officers should have made a demand in a formal and certain manner that their rights be respected.

Although the suit is styled "Petition in Equity," it asks a writ of mandamus against the city's officials to compel them to reinstate the plaintiffs, and also prays that the city of Paducah, a party defendant, be required to pay the plaintiffs the salaries due them from the time they were discharged. Though a mandamus proceeding is regarded in modern practice and the Civil Code of Practice, sec. 477, as an action at law, in reality it is administering equity through common-law forms. Irrespective of the nature of the case, it is well settled that the equitable doctrine of laches should be applied and that an application for the writ must be made within a reasonable time after the alleged default or unauthorized act of the public officers. If not season-

ably made, the delay may afford sufficient cause for its denial, particularly when the delay has been prejudicial to the rights of the respondent or defendant. 18 R. C. L. 335.

The application of the doctrine to cases of this character is supported by the authorities. Thus in U. S. ex rel. Arant v. Lane, Secretary of Interior, 249 U. S. 367, 39 S. Ct. 293, 294, 63 L. Ed. 650, a superintendent of a national park, who was in the classified civil service of the government and could not be removed except for cause, sought a mandamus against the Secretary of the Interior to require him to vacate an order for his dismissal and restore him to his former office. He showed that he had promptly notified the defendant that he was able and willing to perform the duties of his office and had so continued to the time of filing of his petition. He had made every reasonable effort to be restored to his position, but without avail. The defendant pleaded that the plaintiff had not resorted to the courts for nearly two years and that his laches barred any right to the relief sought, if any such right ever existed. In concurring with the judgments of the district court and the Court of Appeals, the Supreme Court stated:

"This court has lately said that while mandamus is classed as a legal remedy, it is a remedial process, which is awarded not as a matter of right, but in the exercise of a sound judicial discretion and upon equitable principles. Duncan Townsite Co. v. Lane, 245 U. S. 308, 38 S. Ct. 99, 62 L. Ed. 309. It is an extraordinary remedy which will not be allowed in cases of doubtful right (Life & Fire Insurance Co. v. Wilson, 8 Pet. 291, 302, 8 L. Ed. 949), and it is generally regarded as not embraced within statutes of limitation applicable to ordinary actions, but as subject to the equitable doctrine of laches (Chapman v. County of Douglas, 107 U. S. 348, 355, 2 S. Ct. 62, 27 L. Ed. 378; Duke v. Turner, 204 U. S. 623, 628, 27 S. Ct. 316, 51 L. Ed. 652, 9 Ann. Cas. 842). * * *

"When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights,

to the end that if his contention be justified the government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.

"Under circumstances which rendered his return to the service impossible, except under the order of a court, the relator did nothing to effectively assert his claim for reinstatement to office for almost two years. Such a long delay must necessarily result in changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, when unexplained, the manifest inequity which would result from reinstating him, renders the application of the doctrine of laches to his case peculiarly appropriate in the interests of justice and sound public policy."

Our case of Stone v. Board of Prison Commissioners, 164 Ky. 640, 176 S. W. 39, is cited in support. In that case we held that a prison guard wrongfully removed from office, who failed to sue for reinstatement or salary for two years thereafter, was barred by laches from obtaining either; there being given no reasonable excuse for the delay. It is true in that case that another man had been put in Stone's place, but in respect of his suit for reinstatement that fact made no difference in the application of the defense of laches, other than to be considered in relation to the change of conditions and harm which had resulted through the plaintiff's failure to take timely action.

In Gorley v. City of Louisville, 108 Ky. 789, 55 S. W. 886, 887, 21 Ky. Law Rep. 1606, a police officer who had been wrongfully removed sued to recover his place and salary. It was shown that no one had been holding his position against whom he might have brought his action, hence his only remedy was to sue the city. It was there said:

"It does not follow, however, that one so situated may remain passive, as appellant did, for about one year, and even earn money from other sources, and then sue for his accumulated salary. He must assert his right to the office and his salary promptly, to the end that upon his restoration to office, if that should follow a favorable decision, he may perform the duties for which he is to be paid, or the

city may take such steps as she may legally do to avoid further loss. This is but common justice to the city. .Upon being refused his salary, appellant ought then to have brought this action.''

Our conclusion therefore is that the court should have sustained the city's plea of laches and granted the plaintiff no relief.

On June 22, 1935, William Sheehan filed an intervening petition in the suit of Gillispie, Davis, and Prince in which he adopted the allegations of their petition as his own and sought the same relief. He set forth that he had been a fireman in the department since 1905 and had the rank of captain at the time of his discharge. The city sought to justify the removal on the ground that his place had been abolished, and made claim that he was ineligible for reinstatement because of his age. The same defenses of estoppel and laches made in the original suit were likewise interposed to the interpleading.

It seems sufficient to say that we concur in the trial court's conclusion that Sheehan was discharged in violation of the civil service statute and of his right of seniority thereunder. However, he had delayed action for nearly three years and five months, and for the same reason of laches sustained in Gillispie's suit we are of opinion that Sheehan lost his right to restoration and salary.

It follows, therefore, that the judgment as it relates to these two men must be and is reversed on the original appeal, and affirmed on the cross-appeal.

Whole court sitting.