RENDERED: NOVEMBER 6, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1292-MR

ON PREMISES SERVICES, INC.,
AND ALBERT H. GRUNEISEN, III                          APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE JUDITH E. MCDONALD-BURKMAN, JUDGE
ACTION NO. 16-CI-005564


STOCK YARDS BANK & TRUST CO.                          APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: COMBS, DIXON, AND MAZE, JUDGES.

DIXON, JUDGE: On Premises Services, Inc. ("OPS") and Albert H. Gruneisen, III, appeal from the order granting summary judgment in favor of Stock Yards Bank & Trust Co. ("SYB") entered on June 11, 2019, and the order denying their motion to alter, amend, or vacate same, entered on August 5, 2019, by the Jefferson Circuit Court. Following a careful review of the briefs, record, and applicable law, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

This case concerns the repayment of a commercial loan. On April 21, 2005, SYB lent OPS $141,015 for a term of five years, as documented by its promissory note ("the Note") of that date. This loan was guaranteed by Gruneisen, documented in a commercial guaranty also entered on that date. OPS made most of the payments on the loan but, after experiencing financial difficulty, eventually stopped making payments. The last payment on the loan was made on January 19, 2010.

On March 5, 2010, Dennis Shaughnessy—on behalf of SYB— emailed Gruneisen advising that he was three payments behind on the loan and asking when payment would be made. Gruneisen replied the same day, "We are in a bit of trouble at OPS . . . I don't have a very good plan for making payments today. I don't know if I could even make interest payments." Consequently, on March 31, 2010, SYB charged off the principal ($43,615.34).

On April 2, 2010, Shaughnessy emailed Gruneisen again asking what he was going to do about making payments. Gruneisen responded, "[B]usiness is still in a pall . . . I bumped into David Heintzman the other evening coming out of a meeting with a bankruptcy attorney." Heintzman is Chairman of the Board and Chief Executive Officer of SYB.

More than eight months later, on December 10, 2010, Shaughnessy emailed Gruneisen yet again to see if he could make any payments on the OPS loan, stating, "I have been instructed by my Loan Committee to begin repossessing all the collateral pledged on you[r] loan.  Please let me know where you stand[.]"  Gruneisen replied, "[T]alked to Paul Palmer this morning and we are going to get back together on January 1st.  Repossessing collateral will only cause bankruptcies and not amount to much for your efforts; in my opinion."  Palmer is a commercial real estate relationship manager for SYB.  No plan or promise to pay was made by Gruneisen.

Nearly six years later, Gruneisen and Heintzman saw each other at a restaurant, following which a renewed effort by SYB to collect repayment of the OPS loan ensued.  On August 25, 2016, Shaughnessy emailed Gruneisen stating, "I have not been able to get approval for a reduced amount of your loan[.]  Present payoff is $82,687.07 and interest daily at $14.24[.]  Please let me know how you want to proceed with paying back the Bank[.]"  Gruneisen responded, "Seems a little harsh considering the amount of business I have sent to you guys, personally and through the startups?  At least forgive the interest as a finder[']s fee?  Who can I talk to?  David?  Would have been nice if we were having this conversation 6 years ago."  Shaughnessy replied and asked Gruneisen to make him an offer to take to the Committee.  Gruneisen responded that he would "get one back to you

tomorrow morning. I do not have the ability to [do] lump sum but maybe chunks."

The following day Gruneisen emailed Shaughnessy stating:

> While I am embarrassed to be having this discussion with you; in my defense, I thought the OPS loan had been written off back in the bad days. In fact, I think one of your executives said as much to me back in 2012ish so I did not address the outstanding balance that has now almost doubled in 6 years. Once again, in my defense, why did somebody not mention something sooner? Like when I was dragging $3-4 Million worth of investor funding into Stockyards from my startups (LiQ and Poly Group)?
>
> During those periods, I was making 2 salaries and I would not have left a liability like your loan sitting around to bite me in the backside. Today, the patents have run out at OPS and its/my income is inconsequential comparatively.
>
> **In summation:**
>
> 1. I thought the loan had been written off
>
> 2. No one has mentioned it in 7 years
>
> 3. My actions, directions and friends have brought a lot of business to Stockyards Bank
>
> So I would ask your indulgence please.
>
> **One plan to consider:**
>
> 1. Forgive the interest and penalties, if any, in recognition of the amount of business I have sent your way since 1980.
>
> 2. Allow me to pay off the balance to the tune of $4,000 per quarter starting October 1, 2016

3.  Make it a personal loan to me[.]

Later that day, Gruneisen asked Shaughnessy for a copy of the loan documents and for the total principal amount. He informed Shaughnessy that he was "going to have to look at financing the lump sum." Instead, SYB filed the instant action against OPS and Gruneisen on November 9, 2016.

Shortly after this action was filed, all parties moved the trial court for summary judgment. On April 23, 2018, after a hearing on the matter, the trial court granted SYB's summary judgment on the issue of waiver, finding SYB had not waived its claims because there was no written waiver. It denied the countermotion for summary judgment, citing to genuine issues of material fact regarding the collection efforts between 2010 and 2016, which would preclude same. Nevertheless, in its order, the trial court remarked, "Laches may bar SYB from recovering all, or at least part, of the six years of accumulated interest if the delay was unreasonable." The parties later renewed their motions for summary judgment with SYB dropping its claim for interest and OPS asserting that the statute of limitations and doctrine of laches bar SYB's claims. The trial court ultimately granted SYB's motion for summary judgment, finding there was no longer a genuine issue of material fact as to the applicability of laches. OPS and Gruneisen moved the trial court to alter, amend, or vacate its order, but their request was denied. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[1] 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006).

## STATUTE OF LIMITATIONS

OPS and Gruneisen argue SYB's claims are barred by the statute of limitations found in KRS[2] 355.3-118, under Kentucky's Uniform Commercial Code ("UCC"). KRS 355.3-118(1) provides, "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six (6) years after the due date or dates stated in the note or, if a due date is accelerated, within six (6) years after the accelerated due date."

---

[1] Kentucky Rules of Civil Procedure.

[2] Kentucky Revised Statutes.

OPS and Gruneisen claim the UCC applies to the Note because it is a negotiable instrument. KRS 355.3-104 defines negotiable instruments under the UCC:

(1) Except as provided in subsections (3) and (4) of this section, "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(a) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(b) Is payable on demand or at a definite time; and

(c) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:

1. An undertaking or power to give, maintain, or protect collateral to secure payment;

2. An authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

3. A waiver of the benefit of any law intended for the advantage or protection of an obligor.

It is undisputed that the Note was a promise to pay a fixed amount of money to SYB with a definite due date of April 21, 2010.

OPS and Gruneisen assert that their case is like *Community Financial Services Bank v. Stamper*, 586 S.W.3d 737 (Ky. 2019), which held that "[a]s a negotiable instrument, the promissory note is subject to the six-year statute of limitations of KRS 355.3-118." *Id.* at 744.   In *Stamper*, the Court observed:

> [T]he Bank filed suit to recover on the Note on January 25, 2016.  If the cause of action accrued on the Note's stated due date of April 25, 2002, as the Bank argues, the suit was untimely.  If the cause of action accrued on September 15, 2000, as Stamper argues, the suit was untimely.  Accordingly, we need not determine whether the Bank's August 2000 letter effectively accelerated the due date of the Note, as this suit was barred by the applicable statute of limitations.

*Id.*  Here, since the due date of the Note was April 21, 2010, the six-year statute of limitations was set to expire on or before April 21, 2016, unless an event prolonging this period occurred prior to that date.  This means that the suit herein was untimely if the limitations period was not extended.[3]

SYB contends that Gruneisen extended the statute of limitations by acknowledging the debt and promising to pay same.  It is well-established:

> A promise, made before a debt is barred, serves to suspend the running of the statute or to prolong the statutory limitation by cutting off the antecedent time, and the action to recover must be brought on the original obligation.  If, however, the debt is barred at the time of the new promise, it must be brought on the new promise.

---

[3]  Like *Stamper*, we need not determine whether the Note was accelerated.

-8-

The promise to pay must be clear, absolute, and unconditional, and proven to have been made within the time prescribed by the statute.

An unqualified acknowledgment of a debt as a subsisting demand is sufficient to prolong the statutory limitation, and an express promise to pay it is unnecessary.

The acknowledgment will operate to take the case out of the statute when it admits the debt continues due at the time of the acknowledgment. The debtor's mere admission of the justice of the debt is sufficient to suspend, or take it out of, the statute of limitations.

*City of Louisa v. Horton*, 263 Ky. 739, 93 S.W.2d 620, 623 (1935) (citations omitted). However, here, the only written communication by Gruneisen to SYB within the applicable statute of limitations—between the date the Note was due and six years thereafter—was his email dated December 10, 2010, in which Gruneisen only stated that he "talked to Paul Palmer this morning and we are going to get back together on January 1st" and "[r]epossessing collateral will only cause bankruptcies and not amount to much for your efforts; in my opinion." This communication was neither a promise to pay the debt, an unqualified acknowledgment of the debt, nor an admission of the justice of the debt. As such, it did not serve to extend the statute of limitations.

Nevertheless, the trial court's first order concerning the parties' summary judgment motions may still be correct in that there may exist genuine issues of material fact regarding the collection efforts between 2010 and 2016.

Should SYB produce evidence of either an acknowledgment and/or promise to pay the debt by Gruneisen, such might form a basis to extend the statute of limitations thereby rendering the suit timely filed. Therefore, it was improper for the trial court to grant summary judgment for SYB in its second order concerning the parties' renewed summary judgment motions.

**LACHES**

OPS and Gruneisen also contend the trial court erred in finding the doctrine of laches to be inapplicable to the case herein simply because SYB dropped its claim for interest. It is well-settled:

> "Laches" in its general definition is laxness; an unreasonable delay in asserting a right. In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party. Thus there are two elements to be considered. *As to what is unreasonable delay is a question always dependent on the facts in the particular case.* Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while a similar period under other circumstances may not. What is the equity of the case is the controlling question. Courts of chancery will not become active except on the call of conscience, good faith, and reasonable diligence. The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right.

*City of Paducah v. Gillispie*, 273 Ky. 101, 115 S.W.2d 574, 575 (1938) (emphasis added) (citations omitted). Laches is "a mixed question of law and fact[.]" *Crady v. Hubrich*, 299 Ky. 461, 185 S.W.2d 949, 951 (1945).

The trial court relied on SYB's decision to no longer pursue interest against OPS and Gruneisen in entering its final judgment. The court determined that decision eliminated the factual issues about whether the delay was unreasonable. However, there are still genuine issues of material fact pertaining to whether SYB's claims were barred by the statute of limitations that make the trial court's grant of summary judgment inappropriate. If SYB's claims are barred by the statute of limitations, the issue of whether the doctrine of laches applies is moot.

## CONCLUSION

Therefore, and for the foregoing reasons, the order entered by the Jefferson Circuit Court is REVERSED, and the matter is remanded to the court for further proceedings consistent with this Opinion.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE: |
|---|---|
| John Valentine<br>Louisville, Kentucky | W. Scott Stinnett<br>Louisville, Kentucky |